# MEDINA v. CALIFORNIA

No. 90–8370.   Argued February 25, 1992—Decided June 22, 1992

438

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, SCALIA, and THOMAS, JJ., joined. O'CONNOR, J., filed an opinion concurring in the judgment, in which SOUTER, J., joined, *post*, p. 453. BLACKMUN, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 456.

*Michael Pescetta*, by appointment of the Court, 502 U. S. 955, argued the cause for petitioner.   With him on the briefs was *Sarah Plotkin.*

*Holly D. Wilkens*, Deputy Attorney General of California, argued the cause for respondent.   With her on the brief were *Daniel E. Lungren*, Attorney General, *George Williamson*, Chief Assistant Attorney General, *Gary W. Schons*, Senior Assistant Attorney General, and *Pat Zaharopoulos*, Supervising Deputy Attorney General.*

JUSTICE KENNEDY delivered the opinion of the Court.

It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.   *Drope* v. *Missouri*, 420 U. S. 162 (1975); *Pate* v. *Robinson*, 383 U. S. 375 (1966).   The issue in this case is whether the Due Process Clause permits a State to require a defendant who alleges incompetence to stand trial to bear the burden of proving so by a preponderance of the evidence.

I

In 1984, petitioner Teofilo Medina, Jr., stole a gun from a pawnshop in Santa Ana, California.   In the weeks that followed, he held up two gas stations, a drive-in dairy, and a market, murdered three employees of those establishments, attempted to rob a fourth employee, and shot at two passersby who attempted to follow his getaway car.   Petitioner was apprehended less than one month after his crime spree

---

*\*Edward M. Chikofsky* and *William J. Rold* filed a brief for the Committee on Legal Problems of the Mentally Ill of the Association of the Bar of the City of New York as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the United States by *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson*, and *Paul J. Larkin, Jr.*; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson.*

began and was charged with a number of criminal offenses, including three counts of first-degree murder. Before trial, petitioner's counsel moved for a competency hearing under Cal. Penal Code Ann. § 1368 (West 1982), on the ground that he was unsure whether petitioner had the ability to participate in the criminal proceedings against him. 1 Record 320.

Under California law, "[a] person cannot be tried or adjudged to punishment while such person is mentally incompetent." Cal. Penal Code Ann. § 1367 (West 1982). A defendant is mentally incompetent "if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." *Ibid.* The statute establishes a presumption that the defendant is competent, and the party claiming incompetence bears the burden of proving that the defendant is incompetent by a preponderance of the evidence. § 1369(f) ("It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent").

The trial court granted the motion for a hearing and the preliminary issue of petitioner's competence to stand trial was tried to a jury. Over the course of the 6-day hearing, in addition to lay testimony, the jury heard conflicting expert testimony about petitioner's mental condition. The Supreme Court of California gives this summary:

> "Dr. Gold, a psychiatrist who knew defendant while he was in the Arizona prison system, testified that defendant was a paranoid schizophrenic and was incompetent to assist his attorney at trial. Dr. Echeandia, a clinical psychologist at the Orange County jail, doubted the accuracy of the schizophrenia diagnosis, and could not express an opinion on defendant's competence to stand trial. Dr. Sharma, a psychiatrist, likewise expressed doubts regarding the schizophrenia diagnosis and leaned toward a finding of competence. Dr. Pierce,

a psychologist, believed defendant was schizophrenic, with impaired memory and hallucinations, but nevertheless was competent to stand trial. Dr. Sakurai, a jail psychiatrist, opined that although defendant suffered from depression, he was competent, and that he may have been malingering. Dr. Sheffield, who treated defendant for knife wounds he incurred in jail, could give no opinion on the competency issue." 51 Cal. 3d 870, 880, 799 P. 2d 1282, 1288 (1990).

During the competency hearing, petitioner engaged in several verbal and physical outbursts. App. 62, 81–82; 3 Record 671, 699, 916. On one of these occasions, he overturned the counsel table. App. 81–82.

The trial court instructed the jury in accordance with § 1369(f) that "the defendant is presumed to be mentally competent and he has the burden of proving by a preponderance of the evidence that he is mentally incompetent as a result of mental disorder or developmental disability." App. 87. The jury found petitioner competent to stand trial. *Id.*, at 89. A new jury was empaneled for the criminal trial, 4 Record 1020, and petitioner entered pleas of not guilty and not guilty by reason of insanity, 51 Cal. 3d, at 899, 799 P. 2d, at 1300. At the conclusion of the guilt phase, petitioner was found guilty of all three counts of first-degree murder and a number of lesser offenses. *Id.*, at 878–879, 799 P. 2d, at 1287. He moved to withdraw his insanity plea, and the trial court granted the motion. Two days later, however, petitioner moved to reinstate his insanity plea. Although his counsel expressed the view that reinstatement of the insanity plea was "tactically unsound," the trial court granted petitioner's motion. *Id.*, at 899, 799 P. 2d, at 1300–1301. A sanity hearing was held, and the jury found that petitioner was sane at the time of the offenses. At the penalty phase, the jury found that the murders were premeditated and deliberate and returned a verdict of death. The trial court imposed the death penalty for the murder convictions and sentenced

petitioner to a prison term for the remaining offenses. *Id.,* at 878–880, 799 P. 2d, at 1287–1288.

On direct appeal to the California Supreme Court, petitioner did not challenge the standard of proof set forth in § 1369(f), but argued that the statute violated his right to due process by placing the burden of proof on him to establish that he was not competent to stand trial. In addition, he argued that § 1369(f) violates due process by establishing a presumption that a defendant is competent to stand trial unless proven otherwise. The court rejected both of these contentions. Relying upon our decision in *Leland* v. *Oregon,* 343 U. S. 790 (1952), which rejected a due process challenge to an Oregon statute that required a criminal defendant to prove the defense of insanity beyond a reasonable doubt, the court observed that "the states ordinarily have great latitude to decide the proper placement of proof burdens." 51 Cal. 3d, at 884, 799 P. 2d, at 1291. In its view, § 1369(f) "does not subject the defendant to hardship or oppression," because "one might reasonably expect that the defendant and his counsel would have better access than the People to the facts relevant to the court's competency inquiry." *Id.,* at 885, 799 P. 2d, at 1291. The court also rejected petitioner's argument that it is "irrational" to retain a presumption of competence after sufficient doubt has arisen as to a defendant's competence to warrant a hearing and "decline[d] to hold as a matter of due process that such a presumption must be treated as a mere presumption affecting the burden of production, which disappears merely because a preliminary, often undefined and indefinite, 'doubt' has arisen that justifies further inquiry into the matter." *Id.,* at 885, 799 P. 2d, at 1291–1292. We granted certiorari, 502 U. S. 924 (1991), and now affirm.

## II

Petitioner argues that our decision in *Mathews* v. *Eldridge,* 424 U. S. 319 (1976), provides the proper analytical framework for determining whether California's allocation of

the burden of proof in competency hearings comports with due process. We disagree. In *Mathews*, we articulated a three-factor test for evaluating procedural due process claims which requires a court to consider

> "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*, at 335.

In our view, the *Mathews* balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which, like the one at bar, are part of the criminal process. *E. g., People* v. *Fields*, 62 Cal. 2d 538, 542, 399 P. 2d 369, 371 (competency hearing "must be regarded as part of the proceedings in the criminal case") (internal quotation marks omitted), cert. denied, 382 U. S. 858 (1965).

In the field of criminal law, we "have defined the category of infractions that violate 'fundamental fairness' very narrowly" based on the recognition that, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Dowling* v. *United States*, 493 U. S. 342, 352 (1990); accord, *United States* v. *Lovasco*, 431 U. S. 783, 790 (1977). The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order. As we said in *Spencer* v. *Texas*, 385 U. S. 554, 564 (1967), "it has never been thought that [decisions under the Due Process Clause] establish this Court as a rulemaking organ for the promulgation of state rules of criminal

procedure." Accord, *Estelle* v. *McGuire*, 502 U. S. 62, 70 (1991); *Marshall* v. *Lonberger*, 459 U. S. 422, 438, n. 6 (1983).

*Mathews* itself involved a due process challenge to the adequacy of administrative procedures established for the purpose of terminating Social Security disability benefits, and the *Mathews* balancing test was first conceived to address due process claims arising in the context of administrative law. Although we have since characterized the *Mathews* balancing test as "a general approach for testing challenged state procedures under a due process claim," *Parham* v. *J. R.*, 442 U. S. 584, 599 (1979), and applied it in a variety of contexts, *e. g.*, *Santosky* v. *Kramer*, 455 U. S. 745 (1982) (standard of proof for termination of parental rights over objection); *Addington* v. *Texas*, 441 U. S. 418 (1979) (standard of proof for involuntary civil commitment to mental hospital for indefinite period), we have invoked *Mathews* in resolving due process claims in criminal law cases on only two occasions.

In *United States* v. *Raddatz*, 447 U. S. 667 (1980), we cited to the *Mathews* balancing test in rejecting a due process challenge to a provision of the Federal Magistrates Act which authorized magistrates to make findings and recommendations on motions to suppress evidence. In *Ake* v. *Oklahoma*, 470 U. S. 68 (1985), we relied upon *Mathews* in holding that, when an indigent capital defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, due process requires that the defendant be provided access to the assistance of a psychiatrist. Without disturbing the holdings of *Raddatz* and *Ake*, it is not at all clear that *Mathews* was essential to the results reached in those cases. In *Raddatz*, *supra*, at 677–681, the Court adverted to the *Mathews* balancing test, but did not explicitly rely upon it in conducting the due process analysis. *Raddatz*, *supra*, at 700 (Marshall, J., dissenting) ("The Court recites th[e] test, but it does not even attempt to apply it"). The holding in *Ake* can be un-

derstood as an expansion of earlier due process cases holding that an indigent criminal defendant is entitled to the minimum assistance necessary to assure him "a fair opportunity to present his defense" and "to participate meaningfully in [the] judicial proceeding." *Ake, supra,* at 76.

The proper analytical approach, and the one that we adopt here, is that set forth in *Patterson* v. *New York,* 432 U. S. 197 (1977), which was decided one year after *Mathews.* In *Patterson,* we rejected a due process challenge to a New York law which placed on a criminal defendant the burden of proving the affirmative defense of extreme emotional disturbance. Rather than relying upon the *Mathews* balancing test, however, we reasoned that a narrower inquiry was more appropriate:

> "It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine* v. *California,* 347 U. S. 128, 134 (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Speiser* v. *Randall,* 357 U. S. 513, 523 (1958); *Leland* v. *Oregon,* 343 U. S. 790, 798 (1952); *Snyder* v. *Massachusetts,* 291 U. S. 97, 105 (1934)." *Patterson* v. *New York, supra,* at 201–202.

Accord, *Martin* v. *Ohio,* 480 U. S. 228, 232 (1987). As *Patterson* suggests, because the States have considerable expertise in matters of criminal procedure and the criminal process is

grounded in centuries of common-law tradition, it is appropriate to exercise substantial deference to legislative judgments in this area. The analytical approach endorsed in *Patterson* is thus far less intrusive than that approved in *Mathews*.

Based on our review of the historical treatment of the burden of proof in competency proceedings, the operation of the challenged rule, and our precedents, we cannot say that the allocation of the burden of proof to a criminal defendant to prove incompetence "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson* v. *New York, supra,* at 202 (internal quotation marks omitted). Historical practice is probative of whether a procedural rule can be characterized as fundamental. See 432 U. S., at 202; *In re Winship,* 397 U. S. 358, 361 (1970). The rule that a criminal defendant who is incompetent should not be required to stand trial has deep roots in our common-law heritage. Blackstone acknowledged that a defendant "who became 'mad' after the commission of an offense should not be arraigned for it 'because he is not able to plead to it with that advice and caution that he ought,'" and "if he became 'mad' after pleading, he should not be tried, 'for how can he make his defense?'" *Drope* v. *Missouri,* 420 U. S., at 171 (quoting 4 W. Blackstone, Commentaries *24); accord, 1 M. Hale, Pleas of the Crown *34–*35.

By contrast, there is no settled tradition on the proper allocation of the burden of proof in a proceeding to determine competence. Petitioner concedes that "[t]he common law rule on this issue at the time the Constitution was adopted is not entirely clear." Brief for Petitioner 36. Early English authorities either express no view on the subject, *e. g.,* *Firth's Case* (1790), 22 Howell St. Tr. 307, 311, 317–318 (1817); *Kinloch's Case* (1746), 18 Howell St. Tr. 395, 411 (1813), or are ambiguous. *E. g., King* v. *Steel,* 1 Leach 452, 168 Eng. Rep. 328 (1787) (stating that, once a jury had determined

that the defendant was "mute by the visitation of God" (*i. e.*, deaf and dumb) and not "mute of malice," there arose a "presumption of ideotism" that the prosecution could rebut by demonstrating that the defendant had the capacity "to understand by signs and tokens").

Nineteenth century English decisions do not take a consistent position on the allocation of the burden of proof. Compare *R.* v. *Turton*, 6 Cox C. C. 385 (1854) (burden on defendant), with *R.* v. *Davies*, 3 Carrington & Kirwan 328, 175 Eng. Rep. 575 (1853) (burden on prosecution); see generally *R.* v. *Podola*, 43 Crim. App. 220, 235–236, 3 All E. R. 418, 429–430 (1959) (collecting conflicting cases). American decisions dating from the turn of the century also express divergent views on the subject. *E. g.*, *United States* v. *Chisolm*, 149 F. 284, 290 (SD Ala. 1906) (defendant bears burden of raising a reasonable doubt as to competence); *State* v. *Helm*, 69 Ark. 167, 170–171, 61 S. W. 915, 916 (1901) (burden on defendant to prove incompetence).

Contemporary practice, while of limited relevance to the due process inquiry, see *Martin* v. *Ohio, supra*, at 236; *Patterson* v. *New York, supra*, at 211, demonstrates that there remains no settled view of where the burden of proof should lie. The Federal Government and all 50 States have adopted procedures that address the issue of a defendant's competence to stand trial. See 18 U. S. C. § 4241; S. Brakel, J. Parry, & B. Weiner, The Mentally Disabled and the Law, Table 12.1, pp. 744–754 (3d ed. 1985). Some States have enacted statutes that, like § 1369(f), place the burden of proof on the party raising the issue. *E. g.*, Conn. Gen. Stat. § 54–56d(b) (1991); Pa. Stat. Ann., Tit. 50, § 7403(a) (Purdon Supp. 1991). A number of state courts have said that the burden of proof may be placed on the defendant to prove incompetence. *E. g.*, *Wallace* v. *State*, 248 Ga. 255, 258–259, 282 S. E. 2d 325, 330 (1981), cert. denied, 455 U. S. 927 (1982); *State* v. *Aumann*, 265 N. W. 2d 316, 319–320 (Iowa 1978); *State* v. *Chapman*, 104 N. M. 324, 327–328, 721 P. 2d 392, 395–396

(1986); *Barber* v. *State*, 757 S. W. 2d 359, 362–363 (Tex. Crim. App. 1988) (en banc), cert. denied, 489 U. S. 1091 (1989). Still other state courts have said that the burden rests with the prosecution. *E. g.*, *Diaz* v. *State*, 508 A. 2d 861, 863–864 (Del. 1986); *Commonwealth* v. *Crowley*, 393 Mass. 393, 400–401, 471 N. E. 2d 353, 357–358 (1984); *State* v. *Bertrand*, 123 N. H. 719, 727–728, 465 A. 2d 912, 916 (1983); *State* v. *Jones*, 406 N. W. 2d 366, 369–370 (S. D. 1987).

Discerning no historical basis for concluding that the allocation of the burden of proving incompetence to the defendant violates due process, we turn to consider whether the rule transgresses any recognized principle of "fundamental fairness" in operation. *Dowling* v. *United States*, 493 U. S., at 352. Respondent argues that our decision in *Leland* v. *Oregon*, 343 U. S. 790 (1952), which upheld the right of the State to place on a defendant the burden of proving the defense of insanity beyond a reasonable doubt, compels the conclusion that § 1369(f) is constitutional because, like a finding of insanity, a finding of incompetence has no necessary relationship to the elements of a crime, on which the State bears the burden of proof. See also *Rivera* v. *Delaware*, 429 U. S. 877 (1976). This analogy is not convincing, because there are significant differences between a claim of incompetence and a plea of not guilty by reason of insanity. See *Drope* v. *Missouri*, *supra*, at 176–177; *Jackson* v. *Indiana*, 406 U. S. 715, 739 (1972).

In a competency hearing, the "emphasis is on [the defendant's] capacity to consult with counsel and to comprehend the proceedings, and . . . this is by no means the same test as those which determine criminal responsibility at the time of the crime." *Pate* v. *Robinson*, 383 U. S., at 388–389 (Harlan, J., dissenting). If a defendant is incompetent, due process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him. See *Dusky* v. *United States*, 362 U. S. 402

(1960) *(per curiam)*. The entry of a plea of not guilty by reason of insanity, by contrast, presupposes that the defendant is competent to stand trial and to enter a plea. Moreover, while the Due Process Clause affords an incompetent defendant the right not to be tried, *Drope* v. *Missouri, supra,* at 172–173; *Pate* v. *Robinson, supra,* at 386, we have not said that the Constitution requires the States to recognize the insanity defense. See, *e. g., Powell* v. *Texas,* 392 U. S. 514, 536–537 (1968).

Under California law, the allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent. See *United States* v. *DiGilio,* 538 F. 2d 972, 988 (CA3 1976), cert. denied, 429 U. S. 1038 (1977). Our cases recognize that a defendant has a constitutional right "not to be tried while legally incompetent," and that a State's "failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope* v. *Missouri,* 420 U. S., at 172, 173. Once a State provides a defendant access to procedures for making a competency evaluation, however, we perceive no basis for holding that due process further requires the State to assume the burden of vindicating the defendant's constitutional right by persuading the trier of fact that the defendant is competent to stand trial.

Petitioner relies upon federal- and state-court decisions which have said that the allocation of the burden of proof to the defendant in these circumstances is inconsistent with the rule of *Pate* v. *Robinson, supra,* at 384, where we held that a defendant whose competence is in doubt cannot be deemed to have waived his right to a competency hearing. *E. g., United States* v. *DiGilio, supra,* at 988; *People* v. *McCullum,* 66 Ill. 2d 306, 312–314, 362 N. E. 2d 307, 310–311 (1977); *State*

v. *Bertrand, supra,* at 727–728, 465 A. 2d, at 916. Because " 'it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial,' " it has been said that it is also "contradictory to argue that a defendant who may be incompetent should be presumed to possess sufficient intelligence that he will be able to adduce evidence of his incompetency which might otherwise be within his grasp." *United States* v. *DiGilio, supra,* at 988 (quoting *Pate* v. *Robinson, supra,* at 384).

In our view, the question whether a defendant whose competence is in doubt may waive his right to a competency hearing is quite different from the question whether the burden of proof may be placed on the defendant once a hearing is held. The rule announced in *Pate* was driven by our concern that it is impossible to say whether a defendant whose competence is in doubt has made a knowing and intelligent waiver of his right to a competency hearing. Once a competency hearing is held, however, the defendant is entitled to the assistance of counsel, *e. g., Estelle* v. *Smith,* 451 U. S. 454, 469–471 (1981), and psychiatric evidence is brought to bear on the question of the defendant's mental condition, see, *e. g.,* Cal. Penal Code Ann. §§ 1369(a), 1370 (West 1982 and Supp. 1992); see generally Brakel, Parry, & Weiner, The Mentally Disabled and the Law, at 697–698. Although an impaired defendant might be limited in his ability to assist counsel in demonstrating incompetence, the defendant's inability to assist counsel can, in and of itself, constitute probative evidence of incompetence, and defense counsel will often have the best-informed view of the defendant's ability to participate in his defense. *E. g., United States* v. *David,* 167 U. S. App. D. C. 117, 122, 511 F. 2d 355, 360 (1975); *United States ex rel. Roth* v. *Zelker,* 455 F. 2d 1105, 1108 (CA2), cert. denied, 408 U. S. 927 (1972). While reasonable minds may differ as to the wisdom of placing the burden of proof on the defendant in these circumstances, we believe that a State

may take such factors into account in making judgments as to the allocation of the burden of proof, and we see no basis for concluding that placing the burden on the defendant violates the principle approved in *Pate.*

Petitioner argues that psychiatry is an inexact science, and that placing the burden of proof on the defendant violates due process because it requires the defendant to "bear the risk of being forced to stand trial as a result of an erroneous finding of competency." Brief for Petitioner 8. Our cases recognize that "[t]he subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations," because "[p]sychiatric diagnosis . . . is to a large extent based on medical 'impressions' drawn from subjective analysis and filtered through the experience of the diagnostician." *Addington* v. *Texas,* 441 U. S., at 430. The Due Process Clause does not, however, require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused. See, *e. g., Patterson* v. *New York,* 432 U. S., at 208 ("Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person"); *Snyder* v. *Massachusetts,* 291 U. S. 97, 105 (1934) (a state procedure "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar"). Consistent with our precedents, it is enough that the State affords the criminal defendant on whose behalf a plea of incompetence is asserted a reasonable opportunity to demonstrate that he is not competent to stand trial.

Petitioner further contends that the burden of proof should be placed on the State because we have allocated the burden to the State on a variety of other issues that implicate a criminal defendant's constitutional rights. *E. g., Colorado* v. *Connelly,* 479 U. S. 157, 168–169 (1986) (waiver of *Miranda* rights); *Nix* v. *Williams,* 467 U. S. 431, 444–445, n. 5 (1984)

(inevitable discovery of evidence obtained by unlawful means); *United States* v. *Matlock*, 415 U. S. 164, 177–178, n. 14 (1974) (voluntariness of consent to search); *Lego* v. *Twomey*, 404 U. S. 477, 489 (1972) (voluntariness of confession). The decisions upon which petitioner relies, however, do not control the result here, because they involved situations where the government sought to introduce inculpatory evidence obtained by virtue of a waiver of, or in violation of, a defendant's constitutional rights. In such circumstances, allocating the burden of proof to the government furthers the objective of "deterring lawless conduct by police and prosecution." *Ibid.* No such purpose is served by allocating the burden of proof to the government in a competency hearing.

In light of our determination that the allocation of the burden of proof to the defendant does not offend due process, it is not difficult to dispose of petitioner's challenge to the presumption of competence imposed by § 1369(f). Under California law, a defendant is required to make a threshold showing of incompetence before a hearing is required and, at the hearing, the defendant may be prevented from making decisions that are normally left to the discretion of a competent defendant. *E. g., People* v. *Samuel*, 29 Cal. 3d 489, 495–496, 629 P. 2d 485, 486–487 (1981). Petitioner argues that, once the trial court has expressed a doubt as to the defendant's competence, a hearing is held, and the defendant is deprived of his right to make determinations reserved to competent persons, it is irrational to retain the presumption that the defendant is competent.

In rejecting this contention below, the California Supreme Court observed that "[t]he primary significance of the presumption of competence is to place on defendant (or the People, if they contest his competence) the burden of rebutting it" and that, "[b]y its terms, the presumption of competence is one which affects the burden of proof." 51 Cal. 3d, at 885, 799 P. 2d, at 1291. We see no reason to disturb the Califor-

nia Supreme Court's conclusion that, in essence, the challenged presumption is a restatement of the burden of proof, and it follows from what we have said that the presumption does not violate the Due Process Clause.

Nothing in today's decision is inconsistent with our longstanding recognition that the criminal trial of an incompetent defendant violates due process. *Drope* v. *Missouri*, 420 U. S., at 172–173; *Pate* v. *Robinson*, 383 U. S., at 386; see also *Riggins* v. *Nevada*, 504 U. S. 127, 139 (1992) (KENNEDY, J., concurring in judgment). Rather, our rejection of petitioner's challenge to § 1369(f) is based on a determination that the California procedure is "constitutionally adequate" to guard against such results, *Drope* v. *Missouri, supra*, at 172, and reflects our considered view that "[t]raditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused ha[s] been left to the legislative branch," *Patterson* v. *New York, supra*, at 210.

The judgment of the Supreme Court of California is

*Affirmed.*

JUSTICE O'CONNOR, with whom JUSTICE SOUTER joins, concurring in the judgment.

I concur in the judgment of the Court, but I reject its intimation that the balancing of equities is inappropriate in evaluating whether state criminal procedures amount to due process. *Ante*, at 443–446. We obviously applied the balancing test of *Mathews* v. *Eldridge*, 424 U. S. 319 (1976), in *Ake* v. *Oklahoma*, 470 U. S. 68 (1985), a case concerning criminal procedure, and I do not see that *Ake* can be distinguished here without disavowing the analysis on which it rests. The balancing of equities that *Mathews* v. *Eldridge* outlines remains a useful guide in due process cases.

In *Mathews*, however, we did not have to address the question of how much weight to give historical practice; in the context of modern administrative procedures, there was no

historical practice to consider. The same is true of the new administrative regime established by the federal criminal sentencing guidelines, and I have agreed that *Mathews* may be helpful in determining what process is due in that context. See *Burns* v. *United States*, 501 U. S. 129, 147–148 (1991) (SOUTER, J., dissenting). While I agree with the Court that historical pedigree can give a procedural practice a presumption of constitutionality, see *Patterson* v. *New York*, 432 U. S. 197, 211 (1977), the presumption must surely be rebuttable.

The concept of due process is, "perhaps, the least frozen concept of our law—the least confined to history and the most absorptive of powerful social standards of a progressive society. But neither the unfolding content of 'due process' nor the particularized safeguards of the Bill of Rights disregard procedural ways that reflect a national historic policy." *Griffin* v. *Illinois*, 351 U. S. 12, 20–21 (1956) (Frankfurter, J., concurring in judgment). Against the historical status quo, I read the Court's opinion to allow some weight to be given countervailing considerations of fairness in operation, considerations much like those we evaluated in *Mathews*. See *ante*, at 448–453. Any less charitable reading of the Court's opinion would put it at odds with many of our criminal due process cases, in which we have required States to institute procedures that were neither required at common law nor explicitly commanded by the text of the Constitution. See, *e. g., Griffin* v. *Illinois, supra* (due process right to trial transcript on appeal); *Brady* v. *Maryland*, 373 U. S. 83 (1963) (due process right to discovery of exculpatory evidence); *Sheppard* v. *Maxwell*, 384 U. S. 333 (1966) (due process right to protection from prejudicial publicity and courtroom disruptions); *Chambers* v. *Mississippi*, 410 U. S. 284 (1973) (due process right to introduce certain evidence); *Gagnon* v. *Scarpelli*, 411 U. S. 778 (1973) (due process right to hearing and counsel before probation revoked); *Ake* v. *Oklahoma, supra* (due process right to psychiatric examination when sanity is significantly in question).

In determining whether the placement of the burden of proof is fundamentally unfair, relevant considerations include: whether the government has superior access to evidence; whether the defendant is capable of aiding in the garnering and evaluation of evidence on the matter to be proved; and whether placing the burden of proof on the government is necessary to help enforce a further right, such as the right to be presumed innocent, the right to be free from self-incrimination, or the right to be tried while competent.

After balancing the equities in this case, I agree with the Court that the burden of proof may constitutionally rest on the defendant. As the dissent points out, *post*, at 465, the competency determination is based largely on the testimony of psychiatrists. The main concern of the prosecution, of course, is that a defendant will feign incompetence in order to avoid trial. If the burden of proving competence rests on the government, a defendant will have less incentive to cooperate in psychiatric investigations, because an inconclusive examination will benefit the defense, not the prosecution. A defendant may also be less cooperative in making available friends or family who might have information about the defendant's mental state. States may therefore decide that a more complete picture of a defendant's competence will be obtained if the defense has the incentive to produce all the evidence in its possession. The potentially greater overall access to information provided by placing the burden of proof on the defense may outweigh the danger that, in close cases, a marginally incompetent defendant is brought to trial. Unlike the requirement of a hearing or a psychiatric examination, placing the burden of proof on the government will not necessarily increase the reliability of the proceedings. The equities here, then, do not weigh so much in petitioner's favor as to rebut the presumption of constitutionality that the historical toleration of procedural variation creates.

As the Court points out, *ante*, at 451–452, the other cases in which we have placed the burden of proof on the government are distinguishable. See *Colorado* v. *Connelly*, 479 U. S. 157, 168–169 (1986) (burden of proof on government to show waiver of rights under *Miranda* v. *Arizona*, 384 U. S. 436 (1966)); *Nix* v. *Williams*, 467 U. S. 431, 444–445, n. 5 (1984) (burden on government to show inevitable discovery of evidence obtained by unlawful means); *United States* v. *Matlock*, 415 U. S. 164, 177–178, n. 14 (1974) (burden on government to show voluntariness of consent to search); *Lego* v. *Twomey*, 404 U. S. 477, 489 (1972) (burden on government to show voluntariness of confession). In each of these cases, the government's burden of proof accords with its investigatory responsibilities. Before obtaining a confession, the government is required to ensure that the confession is given voluntarily. Before searching a private area without a warrant, the government is generally required to ensure that the owner consents to the search. The government has no parallel responsibility to gather evidence of a defendant's competence.

JUSTICE BLACKMUN, with whom JUSTICE STEVENS joins, dissenting.

Teofilo Medina, Jr., may have been mentally incompetent when the State of California convicted him and sentenced him to death. One psychiatrist testified he was incompetent. Another psychiatrist and a psychologist testified he was not. Several other experts testified but did not express an opinion on competence. Instructed to presume that petitioner Medina was competent, the jury returned a finding of competence. For all we know, the jury was entirely undecided. I do not believe a Constitution that forbids the trial and conviction of an incompetent person tolerates the trial and conviction of a person about whom the evidence of competency is so equivocal and unclear. I dissent.

## I

The right of a criminal defendant to be tried only if competent is "fundamental to an adversary system of justice," *Drope* v. *Missouri*, 420 U. S. 162, 172 (1975). The Due Process Clause forbids the trial and conviction of persons incapable of defending themselves—persons lacking the capacity to understand the nature and object of the proceedings against them, to consult with counsel, and to assist in preparing their defense. *Id.*, at 171.[1] See also *Pate* v. *Robinson*, 383 U. S. 375, 378 (1966).

The right to be tried while competent is the foundational right for the effective exercise of a defendant's other rights in a criminal trial. "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Riggins* v. *Nevada*, 504 U. S. 127, 139 (1992) (KENNEDY, J., concurring in judgment). In the words of Professor Morris, one of the world's leading criminologists, incompetent persons "are not really present at trial; they may not be able properly to play the role of an accused person, to recall relevant events, to produce evidence and witnesses, to testify effectively on their own behalf, to help confront hostile witnesses, and to project to the trier of facts a

---

[1] "[I]t is not enough for the district judge to find that the defendant is oriented to time and place and has some recollection of events, but that the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him," *Dusky* v. *United States*, 362 U. S. 402 (1960) (internal quotation marks and bracketing omitted); cf. *Riggins* v. *Nevada*, 504 U. S. 127, 140–141 (1992) (KENNEDY, J., concurring in judgment) (noting distinction between "functional competence" and higher level "competence to stand trial").

sense of their innocence." N. Morris, Madness and the Criminal Law 37 (1982).

This Court's cases are clear that the right to be tried while competent is so critical a prerequisite to the criminal process that "state procedures *must be adequate* to protect this right." *Pate*, 383 U. S., at 378 (emphasis added). "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope*, 420 U. S., at 172. In other words, the Due Process Clause does not simply forbid the State to try to convict a person who is incompetent. It also demands adequate *anticipatory, protective procedures* to minimize the risk that an incompetent person will be convicted. Justice Frankfurter recognized this in a related context: "If the deeply rooted principle in our society against killing an insane man is to be respected, at least the minimum provision for assuring a fair application of that principle is inherent in the principle itself." *Solesbee* v. *Balkcom*, 339 U. S. 9, 23 (1950) (dissenting opinion). Anticipatory protective procedures are necessary as well because "we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial." *Pate*, 383 U. S., at 387. See also *Drope*, 420 U. S., at 183; *Dusky* v. *United States*, 362 U. S. 402, 403 (1960). See generally Miller & Germain, The Retrospective Evaluation of Competency to Stand Trial, 11 Int'l J. Law and Psych. 113 (1988).

This Court expressly has recognized that one of the required procedural protections is "further inquiry" or a hearing when there is a sufficient doubt raised about a defendant's competency. *Drope*, 420 U. S., at 180; *Pate*, 383 U. S., at 385–386. In my view, then, the only question before the Court in this case is whether—as with the right to a hearing—placing the burden of proving competence on the State is necessary to protect adequately the underlying due proc-

ess right. I part company with the Court today, because I believe the answer to that question is in the affirmative.

## II

As an initial matter, I believe the Court's approach to this case effectively asks and answers the wrong doctrinal question. Following the lead of the parties, the Court mistakenly frames its inquiry in terms of whether to apply a standard it takes to be derived from language in *Patterson* v. *New York,* 432 U. S. 197 (1977), or a standard based on the functional balancing approach of *Mathews* v. *Eldridge,* 424 U. S. 319 (1976). *Ante,* at 442–446. The Court is not put to such a choice. Under *Drope* and *Pate,* it need decide only whether a procedure imposing the burden of proof upon the defendant is "adequate" to protect the constitutional prohibition against trial of incompetent persons.

The Court, however, chooses the *Patterson* path, announcing that there is no violation of due process unless placing the burden of proof of incompetency upon the defendant " ' "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." ' " *Ante,* at 445 (quoting *Patterson,* 432 U. S., at 202). Separating the primary right (the right not to be tried while incompetent) from the subsidiary right (the right not to bear the burden of proof of incompetency), the Court acknowledges the primary right to be fundamental in "our common-law heritage," but determines the subsidiary right to be without a "settled tradition" deserving of constitutional protection. *Ante,* at 446. This approach is mistaken, because it severs two integrally related procedural rights that cannot be examined meaningfully in isolation. The protections of the Due Process Clause, to borrow the second Justice Harlan's words, are simply not "a series of isolated points pricked" out in terms of their most specific level of historic generality. *Poe* v. *Ullman,* 367 U. S. 497, 543 (1961) (dissenting opinion). Had the Court taken the same historical-

categorical approach in *Pate* and *Drope*, it would not have recognized that a defendant has a right to a competency hearing, for in neither of those cases was there any showing that the mere denial of a hearing where there is doubt about competency offended any deeply rooted traditions of the American people.

In all events, I do not interpret the Court's reliance on *Patterson* to undermine the basic balancing of the government's interests against the individual's interest that is germane to any due process inquiry. While unwilling to discount the force of tradition and history, the Court in *Patterson* did not adopt an exclusively tradition-based approach to due process analysis. Relying on *Morrison* v. *California*, 291 U. S. 82 (1934), the Court in *Patterson* looked to the "convenience" to the government and "hardship or oppression" to the defendant in forming its allocation of the burden of proof. 432 U. S., at 203, n. 9, and 210.

> " 'The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, *or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression.* Cf. Wigmore, Evidence, Vol. 5, §§ 2486, 2512, and cases cited.' " *Id.*, at 203, n. 9 (quoting *Morrison* v. *California*, 291 U. S., at 88–89) (emphasis added).

See also *Speiser* v. *Randall*, 357 U. S. 513, 524 (1958) (same).

In *Morrison* v. *California*, the historical cornerstone of this Court's decisions in the area of due process and allocation of the burden of proof, the Court considered the consti-

tutionality of a California criminal statute forbidding aliens not eligible for naturalization to farm. The statute provided that, once the State proved the defendant used or occupied farmland, the burden of proving citizenship or eligibility for naturalization rested upon the defendant. See 291 U. S., at 84. At the time, persons of Asian ancestry were generally not eligible for naturalization. See *id.*, at 85–86. The Court observed that in the "vast majority of cases," there. would be no unfairness to the distribution of the burden, because a defendant's Asian ancestry could plainly be observed. *Id.*, at 94. But, where the evidence is in equipoise—as when the defendant is of mixed blood and his outward appearance does not readily reveal his Asian ancestry—"the promotion of convenience from the point of view of the prosecution will be outweighed by the probability of injustice to the accused." *Ibid.* Thus, the Court concluded: "There can be no escape from hardship and injustice, outweighing many times any procedural convenience, unless the burden of persuasion in respect of racial origin is cast upon the People." *Id.*, at 96.

Consistent with *Morrison*, I read the Court's opinion today to acknowledge that *Patterson* does not relieve the Court from evaluating the underlying fairness of imposing the burden of proof of incompetency upon the defendant. That is why the Court not only looks to "the historical treatment of the burden of proof in competency proceedings" but also looks to "the operation of the challenged rule, and our precedents." *Ante*, at 446. That is why the Court eventually turns to determining "whether the rule [placing upon the defendant the burden of proof of incompetency] transgresses any recognized principle of 'fundamental fairness' in operation." *Ante*, at 448.

Carrying out this inquiry, the Court points out that the defendant is already entitled to the assistance of counsel and to a psychiatric evaluation. *Ante*, at 450. It suggests as well that defense counsel will have "the best-informed view" of the defendant's ability to assist in his defense. *Ibid.* Ac-

cordingly, the Court concludes: "[I]t is enough that the State affords the criminal defendant on whose behalf a plea of incompetence is asserted a reasonable opportunity to demonstrate that he is not competent to stand trial." *Ante,* at 451. While I am unable to agree with the Court's conclusion, it is clear that the Court ends up engaging in a balancing inquiry not meaningfully distinguishable from that of the *Mathews* v. *Eldridge* test it earlier appears to forswear.[2]

I am perplexed that the Court, while recognizing "the *careful balance* that the Constitution strikes between liberty and order," *ante,* at 443 (emphasis added), intimates that the apparent "expertise" of the States in criminal procedure

---

[2] Recently, several Members of this Court have expressly declined to limit *Mathews* v. *Eldridge* balancing to the civil administrative context and determined that *Mathews* provides the appropriate framework for assessing the validity of criminal rules of procedure. See *Burns* v. *United States,* 501 U. S. 129, 148–156 (1991) (SOUTER, J., joined in relevant part by WHITE and O'CONNOR, JJ., dissenting) (applying *Mathews* to federal criminal sentencing procedures, stating that *Mathews* does not apply only to civil "administrative" determinations but "[t]he *Mathews* analysis has thus been used as a general approach for determining the procedures required by due process whenever erroneous governmental action would infringe an individual's protected interest"). The Court also acknowledges that it has previously relied on *Mathews* v. *Eldridge* in at least two cases concerning criminal procedure. *Ante,* at 444 (citing *Ake* v. *Oklahoma,* 470 U. S. 68 (1985) (due process requires appointment of psychiatrist where defendant's sanity at the time of the offense is to be significant factor at trial), and *United States* v. *Raddatz,* 447 U. S. 667 (1980) (due process does not require federal district judges to make *de novo* determination with live testimony of issues presented in motion to suppress)).

The Court claims that "it is not at all clear" that *Mathews* was "essential to the results reached in" *Ake* and *Raddatz. Ante,* at 444. I am not sure what the Court means, because both cases unquestionably set forth the full *Mathews* test and evaluated the interests. See *Ake,* 470 U. S., at 77–83; *Raddatz,* 447 U. S., at 677–679. What the Court should find clear, if anything, from these two cases is that the *specific* rights asserted there were historically novel and could hardly be said to have constituted "principle[s] of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

and the "centuries of common-law tradition" of the "criminal process" warrant less than careful balancing in favor of "substantial deference to legislative judgments," *ante*, at 445–446. Because the *Due* Process Clause is not the *Some* Process Clause, I remain convinced that it requires careful balancing of the individual and governmental interests at stake to determine what process is due.

## III

I believe that requiring a possibly incompetent person to carry the burden of proving that he is incompetent cannot be called "adequate," within the meaning of the decisions in *Pate* and *Drope*, to protect a defendant's right to be tried only while competent. In a variety of other contexts, the Court has allocated the burden of proof to the prosecution as part of the protective procedures designed to ensure the integrity of specific underlying rights. In *Lego* v. *Twomey*, 404 U. S. 477 (1972), for example, the Court determined that when the prosecution seeks to use at trial a confession challenged as involuntary, "the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary," because the defendant is "entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered." *Id.*, at 489. See also *Colorado* v. *Connelly*, 479 U. S. 157, 167–169 (1986) (burden on prosecution to show defendant waived *Miranda* rights); *Nix* v. *Williams*, 467 U. S. 431, 444, and n. 5 (1984) (burden on prosecution to show inevitable discovery of evidence obtained by unlawful means); *United States* v. *Matlock*, 415 U. S. 164, 177–178, n. 14 (1974) (burden on prosecution to show voluntariness of consent to search). Equally weighty concerns warrant imposing the burden of proof upon the State here.

The Court suggests these cases are distinguishable because they shift the burden of proof in order to deter lawless conduct by law enforcement and prosecutorial authorities, while in this case deterrence is irrelevant. *Ante*, at 451–453.

If anything, this distinction cuts *against* the Court's point of view. Deterrence of official misconduct during the investigatory stage of the criminal process has less to do with the fairness of the trial and an accurate determination of the defendant's guilt than does the defendant's ability to understand and participate in the trial itself. Accordingly, there is greater reason here to impose a trial-related cost upon the government—in the form of the burden of proof—to ensure the fairness and accuracy of the trial. Cf. *United States* v. *Alvarez-Machain,* 504 U. S. 655, 660 (1992) (official misconduct in the form of forcible kidnaping of defendant for trial does not violate defendant's due process rights at trial). Moreover, given the Court's consideration of nontrial-related interests, I wonder whether the Court owes any consideration to the public interest in the appearance of fairness in the criminal justice system. The trial of persons about whose competence the evidence is inconclusive unquestionably "undermine[s] the very foundation of our system of justice—our citizens' confidence in it." *Georgia* v. *McCollum, ante,* at 49.

"In all kinds of litigation it is plain that where the burden of proof lies may be decisive of the outcome." *Speiser* v. *Randall,* 357 U. S., at 525. To be sure, the requirement of a hearing (once there is a threshold doubt as to competency) and the provision for a psychiatric evaluation, see *Ake* v. *Oklahoma,* 470 U. S. 68, 81 (1985), do ensure at least some protection against the trial of incompetent persons. Yet in cases where the evidence is inconclusive, a defendant bearing the burden of proof of his own incompetency now will still be subjected to trial. In my view, this introduces a systematic and unacceptably high risk that persons will be tried and convicted who are unable to follow or participate in the proceedings determining their fate. I, therefore, cannot agree with the Court that "reasonable minds may differ as to the wisdom of placing the burden of proof" on likely incompetent defendants. *Ante,* at 450.

The Court suggests that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." *Ibid.* There are at least three good reasons, however, to doubt the Court's confidence. First, while the defendant is in custody, the State itself obviously has the most direct, unfettered access to him and is in the best position to observe his behavior. In the present case, Medina was held before trial in the Orange County jail system for more than a year and a half prior to his competency hearing. 3 Tr. 677–684. During the months immediately preceding the competency hearing, he was placed several times for extended periods in a padded cell for treatment and observation by prison psychiatric personnel. *Id.*, at 226, 682–684. While Medina was in the padded cell, prison personnel observed his behavior every 15 minutes. *Id.*, at 226.

Second, a competency determination is primarily a medical and psychiatric determination. Competency determinations by and large turn on the testimony of psychiatric experts, not lawyers. "Although competency is a legal issue ultimately determined by the courts, recommendations by mental health professionals exert tremendous influence on judicial determinations, with rates of agreement typically exceeding 90%." Nicholson & Johnson, Prediction of Competency to Stand Trial: Contribution of Demographics, Type of Offense, Clinical Characteristics, and Psycholegal Ability, 14 Int'l J. Law and Psych. 287 (1991) (citations omitted). See also S. Brakel, J. Parry, & B. Weiner, The Mentally Disabled and the Law 703 (3d ed. 1985) (same). While the testimony of psychiatric experts may be far from infallible, see *Barefoot* v. *Estelle*, 463 U. S. 880, 916 (1983) (BLACKMUN, J., dissenting), it is the experts and not the lawyers who are credited as the "best informed," and most able to gauge a defendant's ability to understand and participate in the legal proceedings affecting him.

Third, even assuming that defense counsel has the "best-informed view" of the defendant's competency, the lawyer's

view will likely have no outlet in, or effect on, the competency determination. Unlike the testimony of medical specialists or lay witnesses, the testimony of defense counsel is far more likely to be discounted by the factfinder as self-interested and biased. Defense counsel may also be discouraged in the first place from testifying for fear of abrogating an ethical responsibility or the attorney-client privilege. See, e. g., ABA Criminal Justice Mental Health Standards § 7–4.8(b), Commentary Introduction, p. 209, and Commentary, pp. 212–213 (1989). By way of example from the case at hand, it should come as little surprise that neither of Medina's two attorneys was among the dozens of persons testifying during the six days of competency proceedings in this case. 1 Tr. 1–5 (witness list).

Like many psychological inquiries, competency evaluations are "in the present state of the mental sciences . . . at best a hazardous guess however conscientious." *Solesbee* v. *Balkcom*, 339 U. S., at 23 (Frankfurter, J., dissenting). See also *Ake* v. *Oklahoma*, 470 U. S., at 81; *Addington* v. *Texas*, 441 U. S. 418, 430 (1979); *Drope*, 420 U. S., at 176. This unavoidable uncertainty expands the range of cases where the factfinder will conclude the evidence is in equipoise. The Court, however, dismisses this concern on grounds that "'[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.'" *Ante*, at 451 (quoting *Patterson*, 432 U. S., at 208). Yet surely the Due Process Clause requires *some* conceivable steps be taken to eliminate the risk of erroneous convictions. I search in vain for any guiding principle in the Court's analysis that determines when the risk of a wrongful conviction happens to be acceptable and when it does not.

The allocation of the burden of proof reflects a societal judgment about how the risk of error should be distributed between litigants. Cf. *Santosky* v. *Kramer*, 455 U. S. 745, 755 (1982) (standard of proof). This Court has said it well

before: "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington* v. *Texas*, 441 U. S., at 427. The costs to the State of bearing the burden of proof of competency are not at all prohibitive. The Court acknowledges that several States already bear the burden, *ante*, at 447–448, and that the allocation of the burden of proof will make a difference "only in a narrow class of cases where the evidence is in equipoise," *ante*, at 449. In those few difficult cases, the State should bear the burden of remitting the defendant for further psychological observation to ensure that he is competent to defend himself. See, *e. g.*, Cal. Penal Code Ann. § 1370(a)(1) (West Supp. 1992) (defendant found incompetent shall be "delivered" to state hospital or treatment facility "which will promote the defendant's speedy restoration to mental competence"). See also *Jackson* v. *Indiana*, 406 U. S. 715, 738 (1972) (Due Process Clause allows State to hold incompetent defendant "for reasonable period of time necessary to determine whether there is a substantial probability" of return to competency). In the narrow class of cases where the evidence is in equipoise, the State can reasonably expect that it will speedily be able to return the defendant for trial.

## IV

Just this Term the Court reaffirmed that the Due Process Clause prevents the States from taking measures that undermine the defendant's right to be tried while fully aware and able to defend himself. In *Riggins* v. *Nevada*, 504 U. S. 127 (1992), the Court reversed on due process grounds the conviction of a defendant subjected to the forcible administration of antipsychotic drugs during his trial. Rejecting the dissent's insistence that actual prejudice be shown, the Court found it to be *"clearly possible"* that the medications affected the defendant's "ability to follow the proceedings, or the substance of his communication with counsel." *Id.*, at 137 (em-

phasis added).   See also *id.,* at 141 (KENNEDY, J., concurring in judgment) (prosecution must show *"no significant risk* that the medication will impair or alter in any material way the defendant's capacity or willingness to react to the testimony at trial or to assist his counsel") (emphasis added).

I consider it no less likely that petitioner Medina was tried and sentenced to death while effectively unable to defend himself.   That is why I do not share the Court's remarkable confidence that "[n]othing in today's decision is inconsistent with our longstanding recognition that the criminal trial of an incompetent defendant violates due process." *Ante,* at 453.   I do not believe the constitutional prohibition against convicting incompetent persons remains "fundamental" if the State is at liberty to go forward with a trial when the evidence of competency is inconclusive.   Accordingly, I dissent.