**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LEO L. DURAN,

       Petitioner - Appellant,

v.

ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

       Respondent - Appellee.

No. 13-2072
(D.C. No. 1:11-CV-00816-JB-GBW)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **GORSUCH**, and **MATHESON**, Circuit Judges.

After his conviction for aggravated battery under state law was affirmed on
direct appeal, Leo Duran filed a habeas petition in state court. In it Mr. Duran
argued that he received constitutionally ineffective assistance of counsel at his
trial because his lawyer failed to raise any argument about his sanity or mental
health. Though Mr. Duran asked for an evidentiary hearing, the trial court
concluded one wasn't necessary and dismissed his petition. The New Mexico
Supreme Court declined to review the result.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Mr. Duran then renewed his complaint in federal court, filing a habeas petition pursuant to 28 U.S.C. § 2254(d). For its part, the district court granted Mr. Duran's request for an evidentiary hearing but ultimately denied relief. The bases for its decision are detailed extensively in a 26-page magistrate judge's report and a 24-page opinion by the district judge. Though Mr. Duran sought and obtained a certificate of appealability to appeal, at the end of the day we can find no lawful basis to reverse.

Federal courts generally cannot overturn a state court decision that denies habeas relief after an "adjudication on the merits" unless "the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law . . . [or] (2) resulted in a decision that was based on an unreasonable determination of the facts. . . ." 28 U.S.C. § 2254(d). Of course, a state court's disposition of a claim warrants such deference only if it "adjudicated" the petitioner's claim "on the merits." Otherwise, our review is typically de novo. *See Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

We note all this because the parties wrangle extensively over the standard of review they wish us to apply to this case. Mr. Duran says we should review his Sixth Amendment claim de novo because it was never adjudicated on the merits by the state trial court. It wasn't adjudicated on the merits, he says, because the state trial court refused his request for an evidentiary hearing and failed to

consider an important piece of evidence — a psychologist's report written by Dr. Richard Fink suggesting that Mr. Duran was not on antipsychotic medication at the time of the assault, "might meet the minimum standards for an insanity defense," and "might not have been able to form specific intent," though the report also went on to find Mr. Duran competent to stand trial. In support of his arguments for de novo review, Mr. Duran points us to *Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (en banc).

New Mexico, meanwhile, insists the state trial court *did* consider Dr. Fink's report. At the same time, the State disputes the idea that an "adjudication on the merits" depends on whether an evidentiary hearing is held or whether a state court happens to consider this or that piece of evidence. In support of its arguments for a more deferential standard of review, New Mexico points us to *Lott v. Trammell*, 705 F.3d 1167, 1211-14 (10th Cir. 2013), as well as *Johnson v. Williams*, 133 S. Ct. 1088 (2013) and *Harrington v. Richter*, 131 S. Ct. 770 (2011). *See also Wilson v. Trammell*, 706 F.3d 1286 (10th Cir. 2013).

Ultimately, however, the parties' dispute over the standard of review doesn't make a difference. Even if we review Mr. Duran's claim de novo and consider all the evidence he amassed in the federal evidentiary hearing, he still cannot prevail. The magistrate judge's and the district court's extensive opinions already do much to explain why this is so, leaving us here to offer only a couple supplementary points.

To establish a Sixth Amendment claim, a petitioner must overcome a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). Absent such a showing, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

And that leads to our first point. Counsel's performance in the state aggravated battery trial may not have been ideal, but neither can we say it amounted to a breakdown of the adversary process. Mr. Duran notes that his trial counsel candidly admitted at the federal evidentiary hearing that he might not have read the report from Dr. Fink that he (counsel) had commissioned. And it is this, Mr. Duran says, that amounts to deficient performance: in his view, counsel should have spent more time and effort investigating a potential mental health defense. The problem is, the extensive record prepared by the district court reveals a good many facts that support counsel's decision not to pursue a mental health defense in this particular case.

Here is a sample of those facts. As it turns out, the public defender in Mr. Duran's state court aggravated battery case was *already* familiar with Mr. Duran thanks to his representation of Mr. Duran in other cases where he had *already* investigated Mr. Duran's mental health. Indeed, the same lawyer had only recently persuaded the government to accept in another case a plea of guilty but

mentally ill. Meanwhile, counsel had found that definitive psychological

evaluations of Mr. Duran had "always come back competent."[1] And after

carefully reviewing the facts associated with this new charge, the lawyer found

that it provided a poor candidate for a mental health defense — and worried that

such a defense could alienate jurors. He came to this conclusion because he

thought the facts here showed pretty clearly that the attack was deliberate and

calculated. The facts showed that Mr. Duran and another inmate were in court for

arraignment where Mr. Duran learned the other man faced charges of sexually

assaulting a child. Later, after the pair were transported to a jail facility,

Mr. Duran punched the other man once in the face, telling him "[t]hat's what

happens to baby molesters." The whole episode was captured on videotape.

Finally, counsel explained that he thought these facts suggested a different much

more promising line of defense — an argument that a single punch doesn't rise to

the level of "aggravated" battery under New Mexico law.

In light of this fuller view of the facts, we cannot say Mr. Duran's counsel

lacked reasonable grounds for declining to investigate an insanity or mental

health defense in this case. Mr. Duran's lawyer made his decision based on past

---

[1] We recognize, of course, that competence and sanity are different things, and that a defendant who is found competent to stand trial may also have been insane (or unable to form specific intent) at the time he committed the crime. *See Medina v. California*, 505 U.S. 437, 448-49 (1992). At the same time, the two are no doubt related, as a defendant's ability to understand the nature of the proceedings against him and assist his attorney may speak to his overall mental health.

familiarity with the defendant's mental health history. He made it based on a reasoned judgment that contesting Mr. Duran's sanity or ability to form specific intent wasn't likely to succeed given the particular facts of the case and could backfire with jurors. He made it based on an assessment, too, that other more promising lines of investigation existed.

The Sixth Amendment does not require an attorney to investigate every possible avenue of research to the ends of the Earth. Instead, it requires an attorney "to make a reasonable investigation in preparing his defense," and that "includ[es] reasonably deciding when to cut off further investigation." *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006); *see Strickland*, 466 U.S. at 690-91. That's what happened here. Defense counsel made a reasoned judgment about the most promising lines of avenue he should pursue in an effort to secure an acquittal. Like any such tactical judgment, this one might be questioned in hindsight but that does not mean it is necessarily unreasoned or unreasonable. *See generally United States v. Ringer*, 200 F. App'x 820, 822 (10th Cir. 2006).

Mr. Duran replies by directing us to *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990). But that case stands for the proposition that an attorney can't abandon his client's only plausible defense if he conducts no investigation whatsoever into that line of argument, especially when he is on notice it might be a fruitful one and he has little reason to think it would fail. *Id.* at 597. Here, by contrast, Mr. Duran's attorney was aware of his client's mental problems and the

evidence he could have used to prove them.  Further, counsel didn't abandon what he thought was his client's only viable defense; he believed he had another, better argument and that a mental health defense could prove counterproductive given the facts of the case at hand.  Simply put, *Bouchillon* bears no meaningful resemblance to our case.

That takes us to our second observation.  To succeed on a Sixth Amendment claim a petitioner must show not only deficient performance.  He must also show that but for that deficient performance a reasonable probability exists that the result of his trial would've been different.  *Strickland*, 466 U.S. at 691-96.  And that requirement too poses a problem for Mr. Duran.  Mr. Duran says his lawyer should've investigated further a possible insanity or mental health defense.  Yet it was his burden at the federal evidentiary hearing to show what a proper investigation would have yielded and how it was reasonably probable to have made a difference at his trial.  *See, e.g.*, *United States v. Rivera*, 900 F.2d 1462, 1472-73 (10th Cir. 1990) ("[T]he defendant bears the burden of proving that his counsel's performance was . . . prejudicial within the meaning of *Strickland*.").  This he has not done.

Before this court Mr. Duran has not attempted to show what a "proper" investigation into his mental health would've yielded besides Dr. Fink's report.  Put differently, the *only* thing Mr. Duran argues an adequate investigation would've yielded is a thorough review by trial counsel of Dr. Fink's report.  Yet

that report indicated Mr. Duran *was* competent and only *might* have a mental health defense — what Mr. Duran's state court counsel not unreasonably described as a "wishy-washy" conclusion. Missing here is any evidence that a proper investigation would have yielded more than Dr. Fink's equivocations, let alone an expert willing to testify that Mr. Duran *was* insane or unable to form the requisite mens rea for the crime with which he was charged. Given that omission, we cannot say Mr. Duran has carried his burden of establishing a reasonable probability that the outcome of his battery trial would have been different even if counsel had studied Dr. Fink's report in depth. *See United States v. Rushin*, 642 F.3d 1299, 1310 (10th Cir. 2011).

The district court's judgment is affirmed.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge