CRAWFORD, Judge
(dissenting):
I respectfully dissent from the majority’s analysis and disposition of both issues. As to Issue II, the majority finds a violation of due process because Appellant was not allowed to introduce specific acts of good character to rebut a permissive inference of knowing use of marijuana, despite Appellant’s own failure to take advantage of the Military Rules of Evidence and our decisions to introduce highly similar evidence under the “good soldier defense.”
As to Issue III, I respectfully dissent because the majority implicitly overrules the provisions of the Manual for Courts-Martial, United States (2002 ed.) (MCM), con *433 cerning modes of proof and fails properly to consider the plain error doctrine.
ISSUE II
FACTS
Appellant was randomly selected to give a urine sample, which tested positive for the use of marijuana. Based on this positive test result, the Government obtained a search authorization to seize hair samples from Appellant, which also tested positive. The Government expert testified that Appellant “had ingested [marijuana] on multiple occasions .... ” In the expert’s opinion, Appellant had used marijuana at least thirty times over a twelve-month period preceding the seizing of the hair samples.
Appellant asserts that these readings were the result of passive inhalation, possibly from individuals who were, unbeknownst to him, smoking marijuana at his house and sprinkling his food with marijuana. To support his unknowing, unwitting, passive inhalation or ingestion, the Appellant sought to call four witnesses who did not live with him to testify that they had not specifically seen Appellant using drugs. Even though Appellant failed to take advantage of our relaxed character evidence rules, the majority holds there was a violation of due process. United States v. Brewer, 61 M.J. at 426, 429 (C.A.A.F.2005).
DISCUSSION
The Due Process Clause “ ‘require[s] that only the most basic procedural safeguards be observed____’” Medina v. California, 505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). “[B]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.” Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990):
The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.
Medina, 505 U.S. at 443, 112 S.Ct. 2572. Importantly, the Supreme Court in Dowling emphasized that “[jjudges are not free, in defining ‘due process,’” to impose on law enforcement officials “[their] ‘personal and private notions’ of fairness____” Dowling, 493 U.S. at 353, 110 S.Ct. 668 (quoting United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)). If the Rules of Evidence are to be ferreted out and made by judges under the cloak of the Due Process Clause, the law of evidence will be inaccessible to those in the field. “Making evidence law accessible is the main reason for the code that has become the most influential body of the American evidence law— the Federal Rules of Evidence.” Christopher B. Mueller & Laird C. Kirkpatrick, Modem Evidence, Doctrine and Practice § 1.2, at 4 (1995). See also Hearings on the Proposed Rules of Evidence before Special Subcommittee on Reform of Federal Criminal Laws of the Committee on the Judiciary, House of Representatives, 93d Cong. 90 (1973)(testimony of Albert Jenner Jr.)(“[T]he administration of justice in the federal courts is suffering seriously. A major factor in this regard is the maelstrom of rules of evidence which must be presently ferreted out and applied by federal judges.”).
The Military Rules of Evidence (M.R.E.) are “applicable in courts-martial ...” M.R.E. 101. The rules governing admission of character evidence are set forth in M.R.E. 404, 405, and 608. These rules have been interpreted very expansively by this Court:
The broad availability of the good soldier defense is supported by many legal doctrines and policy arguments, but none withstand close analysis. Cloaked in the mantle of longstanding court-martial tradition, justified by doctrines of questionable salience, and preserved by judges resistant to the Military Rules of Evidence’s limitations on character evidence, the good soldier defense advances the perception that one of the privileges of high rank and long service is immunity from conviction at court-martial. The defense privileges a *434 certain type of accused servicemember — a person of high rank and reputation in the military community — at the expense of the overall fairness of the court-martial system.
Elizabeth Lutes Hillman, Note, The “Good Soldier” Defense: Character Evidence and Military Rank at Courts-Martial, 108 Yale L.J. 879, 881 (1999). Even so, the defendant did not take advantage of these rules by introducing evidence of law-abidingness or by presenting a good soldier defense.
However broadly read and applied, none of these rules permits evidence of specific acts of good character pertinent to the character trait Appellant wished to prove. Unable to rely on any character evidence rule, the majority relies on the “relevance” of such evidence as an independent basis for admissibility of character evidence prohibited by other rules. Setting aside for the moment that relevance alone is not a cognizable category of character evidence, a hypothetical demonstrates the fallacy of the majority’s reliance on relevance at all. Assume a defendant is charged with vandalism of a car on June 1, 2004, at 11:00 p.m. Also assume, to disprove the vandalism, he offers a witness to testify that the witness walked down the street where the car was located at 9:00 p.m. and did not see the defendant. Any court would exclude that evidence as being irrelevant unless other evidence made it relevant.[1] Certainly, whether he was on the block at 11:00 p.m. on June 1 would be evidence of “consequence to the determination of the action,” but that he was not seen there at 9:00 p.m. does not measurably reduce the likelihood that he was there at 11:00 p.m., unless some other evidence establishes that likelihood.
The majority would like to hold the opposite. Like Federal Rule of Evidence (Fed. R.Evid.) 405(b), M.R.E. 405(b) prohibits the introduction of specific instances of conduct unless “character or trait of character of a person is an essential element of an offense or defense .... ” Character is an issue in criminal cases when the defense of entrapment is raised or a character for truthfulness is an essential element of the defense. In civil actions, specific instances are admissible when there has been a negligent entrustment, defamation, or liable actions. None of those applies in this case.
The drafters of the rules recognized that inferences from past behavior would be important, but excluded such proof under Fed. R.Evid. 405(a) (the model for M.R.E. 405(a)) reasoning that “[0]f the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing.” At the same time “it possesses the greatest capacity to arouse prejudice, to confuse, to surprise and to consume time.” Fed.R.Evid. 405, Notes of Advisory Committee on Rules. Here, as indicated, the specific instances do not cover the relevant around-the-clock time period, nor could they.
Thus, I respectfully dissent from the further expansion of character evidence rules.
ISSUE III
FACTS
During the preliminary instructions before voir dire, the military judge stated, “The accused is presumed to be innocent of the offense. The Government has the burden of proving the accused’s guilt by legal and competent evidence beyond a reasonable doubt.” Under oath, all of the members agreed with the rule of law that the accused “is presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt.” All of the members agreed to find the accused not guilty unless they were “convinced beyond a reasonable doubt ...” of his guilt. They also agreed that the burden of proof to establish the accused’s guilt rests solely upon the prosecution, that the burden never shifts to the defense to establish the accused’s innocence, and that the defense has no obligation to present any evidence or to disprove the elements of the offense. The members also recognized the distinction between “knowing ingestion of marijuana” and “using marijuana unknowingly, which is not a crime.”
*435 The military judge instructed the court members:
Knowledge of the presence of the controlled substance is a required component of use. Knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused’s body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the government’s burden of proof as to knowledge.
To be punishable under Article 112a, use of a controlled substance must be wrongful. Use of a controlled substance is wrongful if it is without legal justification or authorization.
Use of a controlled substance is not wrongful if such act or acts are: (a) done pursuant to legitimate law enforcement activities (for example, an informant who is forced to use drugs as part of an undercover operation to keep from being discovered is not guilty of wrongful use); (b) done by authorized personnel in the performance of medical duties or experiments; or (c) done without knowledge of the contraband nature of the substance (for example, a person who uses marijuana, but actually believes it to be a lawful cigarette or cigar, is not guilty of wrongful use of marijuana).
Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required.

The burden of going forward with evidence with respect to any such exception in a court-martial shall be upon the person claiming its benefit.

If such an issue is raised by the evidence presented, then the burden of proof is upon the United States to establish that the use was wrongful.

Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances. However, the drawing of any inference is not required.
Emphasis added.
Later, he instructed the members:
You are further advised, first, that the accused is presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt; ... the burden of proof to establish the guilt of the accused beyond a reasonable doubt is on the government. The burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of the offense.
There was no objection to these instructions. The italicized portions of the military judge’s instructions were taken verbatim from the Manual for Courts-Martial United States (2000 ed.) (MCM), pt. IV, H 37c(5). The instruction from the Military Judges’ Benchbook is as follows:
To be punishable under Article 112a, use of a controlled substance must be wrongful. Use of a controlled substance is wrongful if it is without legal justification or authorization. (Use of a controlled substance is not wrongful if such act or acts are: (a) done pursuant to legitimate law enforcement activities (for example, an informant who is forced to use drugs as part of an undercover operation to keep from being discovered is not guilty of wrongful use); or (b) done by authorized personnel in the performance of medical duties or experiments.)
Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances (including but not limited to _). (You may infer from the presence of (_) in the accused’s urine that the accused knew (he)(she) used (_).) However, the drawing of any inference is not required. Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required.
*436 Legal Services, Dep’t. of Army Pamphlet 27-9, Military Judges’ Benchbook, ch. 3, para. 3-37-2d (2001).
Defense Argument. Appellant argues it was error to instruct the members using the portion of the instruction highlighted above, because it created a “mandatory rebuttable presumption” that the Appellant’s use of marijuana was wrongful. He contends that “[a] reasonable court member could have interpreted the instruction as relieving the government of its burden of persuasion on the wrongfulness element and shifting that burden entirely to the appellant.” Thus a court member could have understood that “the government had no burden of any kind on the element of wrongfulness____”
Government Argument. The Government argues the military judge’s instruction did not explicitly create a mandatory rebuttable presumption, because it did not direct the members to presume the use of marijuana was wrongful. To the contrary, the instruction properly allowed the members to infer the use was wrongful, but noted that the inference was not required.
DISCUSSION
There was no error. The prosecution is entitled to rely “ ‘on a permissive inference of wrongfulness, which has long been recognized by military law as flowing from proof of the predicate fact of use of the drug.” United States v. Ford, 23 M.J. 331, 333 (C.M.A.1987)(citing United States v. Harper, 22 M.J. 157, 162 (C.M.A.1986)). See also United States v. Pabon, 42 M.J. 404, 406 (C.A.A.F.1995).
The Supreme Court has stated that “[i]nferences and presumptions are a staple of our adversary system of fact-finding. It is often necessary for the trier of fact to determine the existence of an element of the crime — that is, an ‘ultimate’ or ‘elemental’ fact — from the existence of one or more ‘evidentiary’ or ‘basic’ facts.” County Court of Ulster County v. Allen, 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). The inferences and presumptions do not necessarily deprive an accused of his due process rights. Id. “[I]n criminal cases, the ultimate test of any device’s constitutional validity in a given ease remains constant: the device must not undermine the factfinder’s responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.” Id.; see also In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
Who creates presumptions and inferences. As Justice Powell noted, presumptions may be created by legislative bodies or based on “common sense, and experience____” Allen, 442 U.S. at 172, 99 S.Ct. 2213 (Powell, J., dissenting). The President has the authority to create presumptions and inferences under Article 36, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836 (2000). Unless prohibited by controlling law to the contrary, in matters of procedure, the President has the authority to place either or both the burden of production and persuasion on the defense and has done so in appropriate provisions of the MCM. As noted, the italicized instructions given in this case were taken verbatim from the MCM. Further, those same benchbook instructions, taken substantially verbatim from the MCM, have been used in hundreds of cases.
The courts have uniformly upheld the assignment of the initial burden to the defense as to duress, necessity, and mental responsibility. In fact, as to this latter issue, the MCM places upon the defense not only the burden to rebut a presumption of sanity but the requirement to do so by clear and convincing evidence.[2] Many special or affirmative defenses entail shifts of burdens and permissible inferences, e.g., entrapment and duress.
All that said, what this case entails is a permissive inference, permitted by the Supreme Court, our case law, the President, and common sense. As to inferences and presumptions, the Supreme Court said:
The most common evidentiary device is the entirely permissive inference or presumption, which allows — but does not require— the trier of fact to infer the elemental fact *437 from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. In that situation the basic fact may constitute prima facie evidence of the elemental fact. When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the “beyond a reasonable doubt” standard only if, under the facts of the ease, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.
Allen, 442 U.S. at 157, 99 S.Ct. 2213 (internal citations omitted).
Mandatory presumption vs. permissible inference. A mandatory presumption tells the trier of fact that he, she, or they must find the elemental fact upon proof of the basic fact, unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts. Id. The Supreme Court noted a class of quasi-mandatory presumptions “that merely shift the burden of production to the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution; and presumptions that entirely shift the burden of proof to the defendant.” Id. at 160, n. 16, 99 S.Ct. 2213. The Court stated, “To the extent that a presumption imposes an extremely low burden of production — e.g., being satisfied by ‘any1 evidence— it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such.” Id.; see also Mullaney v. Wilbur, 421 U.S. 684, 702 n. 31, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).
In drug cases such as Appellant’s, members are allowed to infer wrongful use. This entirely permissive inference allows, but does not require, the trier of fact to infer the elemental fact (wrongfulness) from proof by the evidence of the basic fact (presence of the drug’s metabolite in one’s system), but places no burden of any kind on the defendant. In other words, even if the defendant were to introduce no evidence whatsoever, the members would be absolutely free to reject the permissive inference, find that the Government had not proved wrongful use, and acquit. Allen, 442 U.S. at 157, 99 S.Ct. 2213.
The key issue in this case was a sub-element of wrongfulness, i.e., whether there was knowing use of a controlled substance by Appellant. Unlike the case in which a single use of marijuana is alleged to have occurred when an accused accidentally ate the wrong brownie at a party, the evidence of knowing, multiple usage by Appellant is overwhelming. Under these circumstances, instructing on the existence of a permissive inference of wrongfulness is nothing more than a reminder to the members that they need not check their common sense at the door to the deliberation room.
Initial allocation. Contrary to Appellant’s argument, the military judge was explicit in his instruction that the burden of proving wrongfulness was on the Government, and that even if the defense produced evidence to support an unknowing or otherwise lawful use, the burden of proving wrongfulness, beyond a reasonable doubt, remained with the Government. The burden of proof, with regard to innocence, never shifted to Appellant, nor did the military judge, through his instructions, create a rebuttable presumption of guilt. The instructions explained the element of wrongfulness, that the members could infer wrongfulness, if they chose, and that in determining whether to make that inference, the members should consider evidence that could establish an exception to what might otherwise be a wrongful use. He also instructed the members: “The burden of going forward with evidence with respect to any such exception in any court-martial shall be upon the person claiming its benefit.”
Fuller. In arguing that his case is similarly situated to United States v. Fuller, No. ACM 35058, 2004 CCA LEXIS 182, at *11-16, 2004 WL 1539559 at *4-6 (A.F.Ct.Crim. *438 App. June 23, 2004)(unpublished opinion), Appellant fails to consider all the instructions given by the military judge in this case, particularly those on knowledge, innocent ingestion, and unknowing ingestion. The military judge appropriately tailored the standard instructions by including and highlighting the evidence raised by the defense. Finally, the military judge concluded his instructions by once again reminding the members that the “burden is on the prosecution to establish the guilt of the accused.”
Plain error. Even if there were error, it was not plain. There was no objection by the defense in this case. R.C.M. 920(f). In fact, during the Article 39(a), UCMJ, session on the instruction, there was a discussion of these instructions and neither side commented upon it. In Johnson v. United States, the Supreme Court stated:
[Bjefore an appellate court can correct an error not raised at trial, there must be (1) “error,” (2) that is “plain,” and (3) that “affects substantial rights.” If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error “ ‘seriously affects the fairness, integrity, or public reputation of judicial proceedings.’ ”
520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)(internal citations omitted); see also United States v. Kho, 54 M.J. 63, 65-66 (C.A.A.F.2000).
There is no difference between “affect[s] substantial rights” and a “material ] prejudice[ ][of] substantial rights” under Article 59(a), UCMJ, 10 U.S.C. § 859(a)(2000). See United States v. Kho, 54 M.J. 63, 66 (C.A.A.F.2000)(Crawford, C.J., concurring in the result). Even if there were error and it was plain, it did not “affect substantial rights” or “seriously affect the fairness, integrity, or public reputation of the judicial proceedings.” Johnson, 520 U.S. at 467, 117 S.Ct. 1544. In this case, there was testimony that the Department of Defense cutoff level for confirmation for the marijuana metabolite (THC) in urine is fifteen nanograms per milliliter. Appellant’s urinalysis sample, given on August 7, 2000, tested positive for THC in the amount of 97.89 nanograms per milliliter. The testimony added that because the human body metabolizes marijuana rapidly, an individual will usually test positive for THC for only three days after one recreational use. Therefore, the prosecution’s theory at trial was that Appellant ingested drugs a few days before his urinalysis.
The prosecution also presented the results of Appellant’s hair analysis to support its theory that Appellant had used marijuana on divers occasions during the charged time-frame. The testing involved dividing hair segments taken from Appellant. As each segment represented approximately twelve months of growth, the hair analysis would suggest a rough idea of Appellant’s drug use for the twelve months prior to October 5, 2000, the day the hair sample was taken.
THC cannot be found in hair unless the body actually metabolizes marijuana. The metabolite for marijuana in the hair is a strong indicator that the individual used marijuana, as it is virtually impossible for THC to enter the hair if the body has not metabolized the drug. Furthermore, expert testimony established that the person whose hair was tested in this case had ingested THC on multiple occasions in the time period.
Appellant’s hair certainly tested positive for marijuana, as did his urine. Appellant did not attack the lab testing procedures, only the interpretation of the results. In the expert’s opinion, based on the hair analysis alone, Appellant had used at least thirty recreational doses of marijuana for the twelve months preceding the date the hair sample was provided.
CONCLUSION
Any rational court-martial panel would have been convinced beyond a reasonable doubt that Appellant knowingly and wrongfully used marijuana, even had all of Appellant’s witnesses testified, and without any instruction on the permissive inference. The numbers from the hair testing alone speak for themselves. The defense evidence attempting to establish possible innocent ingestion and passive inhalation were simply unbelievable. There was also evidence of *439 Appellant’s negative reactions during the search process.
The trial counsel did not rely on the allegedly erroneous instructions or even refer to them in his closing argument. Trial counsel summed up the theme of his argument by telling the members:
Convinced beyond a reasonable doubt. And in this case, it is absolutely there. It is absolutely in front of you. There is no reasonable hypothesis. The one presented by the defense is absolutely not reasonable. There is no other one. We have excluded all reasonable hypotheses to explain his situation.
During closing argument, defense counsel made certain the members understood the correct standard to apply. Defense counsel argued:
The standard you must apply is whether any reasonable doubt exists as to whether Master Sergeant Brewer knowingly and wrongfully used marijuana ....
You know, someone may feel that, “Well, I think he probably did it,” or, “He didn’t prove that the urine and hair tests — he didn’t make any positive proof that the urine and hair tests were wrong.” Well, that is not the standard____
Master Sergeant Brewer, according to the Judge’s instructions which you are going to hear, doesn’t have to prove anything. The burden also rests with the government.
Defense counsel went on to argue, “[w]e don’t have to present any alternative theory. The Government has to present the scenario that it must hold true beyond a reasonable doubt.”
Additionally, once both sides presented their findings arguments, the military judge instructed the members that “the burden of proof to establish the guilt of the accused beyond a reasonable doubt is on the government. The burden never shifts to the accused to establish his innocence or to disprove the facts necessary to establish each element of the offense.”
Under these circumstances, it is clear beyond a reasonable doubt that the instructions at issue were not erroneous and, even if they were, they did not unfairly prejudice Appellant. Irrespective of the instructions, the expert testimony established beyond a reasonable doubt that Appellant used marijuana on multiple occasions. Even if all of Appellant’s evidence had been admitted, the overwhelming strength of the Government’s case and the comparative weakness of Appellant’s “alibi,” “character,” or “inference defeating” evidence lead me to conclude, beyond a reasonable doubt, that the trial results would have been the same. United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F.1999).
Thus, I respectfully dissent from the majority’s expansion of the Military Rules of Evidence under the Due Process Clause, from its failure to consider the instructions of the military judge in the context of the entire case, and from its rejection of the modes of proof promulgated by the President.

. See, e.g„ M.R.E. 104(b).

. Rule for Courts-Martial (R.C.M.) 916(k)(3)(A).