Filed 1/10/22  P. v. Dawes CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079189 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS287189 Super. Ct. No. MH114896 ) |
| WILLIAM ORREN DAWES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederick Maguire, Judge.  Reversed.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Arlene A. Sevidal, Acting Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

A trial court found William Orren Dawes mentally incompetent to stand trial and further found he lacks capacity to make decisions regarding the administration of antipsychotic medication.  (Pen. Code, §§ 1368, 1369,

1370.)[1]  The trial court ordered that Dawes be committed to a state hospital. Dawes appeals, contending the trial court erred by failing to appoint a second mental health expert to assess his competency and by failing to comply with the requirements to justify imposing involuntary medication.  The Attorney General agrees a second mental health expert should have been appointed and concedes that the judgment of incompetency and the involuntary medication order should be vacated.  We accept the Attorney General's concessions and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Dawes is serving a life sentence for the murder of his niece.  (*People v. Dawes* (Feb. 25, 2010, G041340) [nonpub. opn.], review den. May 12, 2010 (*Dawes*).)[2]  At the trial for the commitment offense, the jury rejected Dawes's defense of insanity and found he was legally sane at the time he committed the murder.  (*Ibid.*)

According to police reports, in April 2016, Dawes ran after a captain in the prison yard and hit him over the head with a block of concrete.  A chase ensued, and during an altercation, Dawes hit another officer in the head with a rock.  The incident occurred while Dawes was incarcerated at the Richard J. Donovan Correctional Facility.

A complaint filed in June 2016 charged Dawes with one count of attempted murder (§§ 187, subd. (a), 664; count 1), two counts of assault by a life prisoner against two different correctional facility officers (§ 4500; counts 2 & 3), and two counts of assault with a deadly weapon by a prisoner

---

[1]  Subsequent statutory references are to the Penal Code unless otherwise stated.

[2]  We take judicial notice of this prior appeal.  (Evid. Code, §§ 452, subd. (a), 459, subd. (a).)

2

(§ 4501, subd. (a); counts 4 & 5). Dawes was alleged to have suffered one prior strike conviction.[3]

In July 2016, the trial court suspended criminal proceedings under section 1368 and directed officials at the Donovan facility to provide any medical records or jail notes to the forensic clinic. Dawes was subsequently declared competent to stand trial.

In August 2017, when trial was scheduled to commence, defense counsel objected to Dawes being under the influence of forced medication during trial. Counsel stated that the antipsychotic medication that Dawes was taking, Zyprexa (olanzapine), was interfering with his ability to assist counsel.[4] Trial was continued to allow the parties to address the issue of whether it was necessary to forcibly medicate Dawes.

In May 2018, Dr. Rao, a staff forensic psychiatrist with the Behavioral Health Services division of the San Diego County Health and Human Services Agency, conducted an evaluation of Dawes's mental health and subsequently issued a Forensic Psychiatry Clinic Report on Mental

---

[3] An amended information filed in August 2017 charged Dawes with one count of attempted murder (§§ 187, subd. (a), 664; count 1), three counts of assault by a life prisoner against three different correctional facility guards (§ 4500; counts 2, 4 & 6), and three counts of assault with a deadly weapon by a prisoner (§ 4501, subd. (a); counts 3, 5 & 7). Dawes was alleged to have suffered one prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12, 668.)

[4] Zyprexa is a brand name for the generic medication olanzapine. The prosecutor emphasized that no court had ordered Dawes to be medicated, and that, to date, "all medication orders ha[d] come from the CDCR [California Department of Corrections and Rehabilitation] . . . ."

Competency to Stand Trial, which concluded that Dawes was not competent to stand trial.[5]

In July 2018, Dr. Struble, a psychiatrist with the Department of Corrections and Rehabilitation, issued a notice of non-renewal of involuntary psychiatric medication. The notice observed that prior orders required Dawes to be medicated with psychiatric drugs involuntarily because he was a danger to himself and to others. However, Dr. Struble concluded he would not seek renewal of the current involuntary medication order, which was scheduled to expire in September 2018 because Dawes was no longer showing psychotic symptoms, even though there were no detectable levels of olanzapine in his system.

In August 2018, another staff forensic psychiatrist with the county Behavioral Health Services division, Dr. Badre, performed a subsequent evaluation and issued an updated report on Dawes's mental competency, concluding that Dawes "appears presently competent," but noted "concern[]

---

[5] In his report, Dr. Rao observed that Dawes was presently "delusion[al]" and "illogical," displaying a "labile" affect, and demonstrating "poor" reality testing and "marginal" impulse control. Dr. Rao opined that Dawes suffered from a severe mental disorder ("[p]sychotic disorder, not otherwise specified"), was not capable of understanding the nature of the criminal proceedings, and was not capable of assisting his attorney in his defense in a rational manner. Dr. Rao further opined that "treatment with antipsychotic medications is in the best medical interest in light of his medical condition" and further opined that Dawes lacked the capacity to make decisions regarding antipsychotic medication and that involuntary medication under section 1370 was warranted.

that his recent onset of non-compliance with his psychotropics may lead to changes in his presentation and mental state."[6]

At a hearing in January 2019, defense counsel reported "some psych issues, possible 1368," and subsequently moved to suspend proceedings and obtain an evaluation under section 1368. The trial court suspended criminal proceedings and ordered a section 1368 evaluation. Dawes informed the court that he wanted to submit "the final paperwork [¶] . . .[¶] like towards the Fifth Amendment," and when the court informed Dawes that criminal proceedings were suspended, Dawes stated, "Then I want a *Marsden* hearing because . . . I'm not being adequately represented by the Public Defender's Office, and so I would like either a state-appointed attorney or to represent myself because I'm tired of the 1368s. And I'm tired of being treated like I'm mentally ill when I'm not, because a jury already decided."[7] The trial court conducted a hearing and denied Dawes's *Marsden* motion.[8] During the hearing, Dawes stated, "[the public defenders] haven't done anything for the case or on my behalf. They're not willing to. Those were his words. Because

---

[6]     At that time, Dr. Badre observed that Dawes's "affect had acceptable range," that his "thought content was without apparent delusion or hallucination," and his "thought process was linear, and logical but simple." Dr. Badre observed that, although Dawes suffered from mental illness, there was no active sign that prevented him from being able to have a rational understanding of the charges against him or to disable him from assisting his legal counsel.

[7]     Dawes's statement that a jury decided his sanity appears to refer to the jury's determination at his prior murder trial that he was legally sane at the time he committed that crime.

[8]     During the period from late 2017 through the beginning of 2019, Dawes made several *Marsden* motions, which were all denied. (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).)

every chance I mention something, all they want to do is a 1368 to delay the process. [¶] How many times do we have to go through a 1368? . . . Because I have other issues I need to proceed with. Like because, like, I can't get any help with them whatsoever."

Dawes was evaluated by Dr. Badre in March of 2019. Dawes informed the doctor that, although he previously took Zyprexa, he was no longer taking that medication. Dawes denied having ongoing symptoms of mental illness and reported that the psychiatrist he was seeing in jail "was not concerned about his mental health." In his report dated April 2019, Dr. Badre observed that Dawes showed no "active sign" preventing him from being able to have rational understanding of the charges or disabling him from assisting his legal counsel. Dr. Badre concluded Dawes was presently competent to stand trial.

Court minutes indicate that Dawes's hearing on competency was continued several times between April and December 2019 for various reasons.[9] During this time, Dawes wrote letters to the trial court complaining about the competency proceedings and his attorneys.[10]

In December 2019, two forensic psychiatrists from the county Behavioral Health Services division, Drs. Badre and Carroll, jointly evaluated Dawes and submitted a report that opined Dawes was presently

---

[9] Transcripts from the status conferences do not appear in the record, and the court minutes do not reflect any additional information regarding the continuances.

[10] In a letter dated May 31, 2019, Dawes wrote that he "intend[s] to seek the [d]eath penalty against the People of the State of [California]. I represent the prisoners. [¶] WAR means WAR[.] [¶] In a time of war there is no need for peace. [¶] No [j]ustice, [n]o [p]eace." In July, he wrote, "Time to bring in the Marines, Army, Navy and the Air Force and blow you savages to smitherines [*sic*]! Real men go to [w]ar."

6

competent to stand trial. On the date set for Dawes's trial on competency, court minutes reflect that counsel appeared, but Dawes was not present. The competency trial was again continued. Dawes continued writing letters to the court complaining about the competency proceedings and forced medication and expressing his desire to go to trial.[11] In his letters, he denied having mental illness and denied needing medication to treat it. In May 2021, Dawes filed a series of handwritten documents requesting "[t]o disqualify the [p]rosecutor" and referencing discovery and the "[l]oss of physical evidence" in the criminal proceedings.

After the trial court set a June 2021 trial date for Dawes's mental competency, Dr. Badre conducted a subsequent evaluation.[12] When Dr. Badre asked Dawes what had led to the incident underlying the current charges, Dawes said that prison officers had taken " 'my property, my papers and my property card. They didn't just take my property, they destroyed the evidence so I couldn't be compensated.'" When asked about the status of his case, Dawes told Dr. Badre that the public defender's office was interfering, had taken " 'every step to keep me from being compensated,'" and had caused his federal lawsuit to be dismissed. Dawes said, " 'That judge put it in

---

[11] In March 2021, Dawes wrote, "The [p]ublic [d]efenders office has been arguing my incompetence now for five [years]. In fact, I have a conflict of [interest] with [p]ublic [d]efenders office, for man who raped my sister grandmother works for [p]ublic [d]efenders office. Also, [p]ublic [d]efenders say, 'they will only stop arguing incompetence if I plead guilty to charges.' Law states that one cannot use false evidence along with perjured testimony to convict. (*Sic*.)"

[12] The evaluation was conducted on May 24, 2021. Due to the COVID-19 pandemic and the limitation on professional visits, the evaluation was conducted by video. Dr. Badre noted that "[t]he video and audio quality of the interview was appropriate."

writing that robbery is legal and putting me to death for a crime doesn't violate the [C]onstitution either.' " Dawes told the doctor he was " 'taking this to the United Nations. This is the only country that uses antipsychotics for punishment. Brainwashing is a war crime. Saying that robbery is legal is a war crime that carries the death penalty for them.' " Dawes then said, " 'This whole thing is about war,' " " 'I intend on taking military action against these people,' " and, " 'This is the peace treaty with the British government. It is in the [C]onstitution of the United States, that is my argument.' " Dawes said he has " 'been sentenced to death' " because " '[t]he medication causes death.' " He acknowledged he was no longer taking medication but stated " 'the side effects haven't stopped.' " He said that the side effects included " 'involuntary movement' " and a " 'lethal' " rash that was " 'still spreading.' " Dr. Badre asked to see the rash, and Dawes said, " '[he] covered it with the creams, you can't see it,' " but if he stops the cream, " 'it spreads,' " and insisted, " '[i]t will kill [him].' " Dawes then said that the public defender's office is " 'against [him]' " because " '[a]ll the officers are Mexicans,' " " 'there is a public defender that raped my sister,' " " 'Mexicans will protect Mexicans,' " and " 'The federal judge is Mexican, so there is a conflict of interest.' " Dawes then said that it was " 'a war crime' " because he had been prescribed " 'antipsychotics as a punishment' " " 'because of the attack on the captain.' " He told Dr. Badre that, " '[b]ecause [he] was charged civilly, [he] can't be charged criminally.' "

Dr. Badre issued a forensic psychiatry clinic report summarizing portions of the conversation he had with Dawes and opining that Dawes was not competent to stand trial. Dr. Badre again observed that Dawes suffers from mental illness ("[p]sychosis [n]ot [o]therwise [s]pecified"). Dr. Badre observed that, unlike prior interviews, Dawes "was not calm but restless. His

8

speech was loud and hyperverbal. He was uncooperative and often interrupted me." He further observed that, unlike in prior interviews, Dawes "did not smile but had an angry mood and a labile affect. His thought content had notable delusions about the court proceedings and the motivation of court personnel. His thought process had psychotic fixation and rigidity to the point of losing logic when discussing his delusions. His insight and judgment were poor." Dr. Badre opined that Dawes was currently "displaying active signs of mental illness including delusions. Those symptoms of mental illness disable the defendant from being able to have a rational understanding of the charges and assist legal counsel. Delusions included: [¶] (1) The federal judge wrote that robbery was legal, (2) The federal judge sentenced him to death, (3) He is being brainwashed as part of a war crime, (4) People involved in his case will get the death penalty from the United Nations, (5) His case is related to war, (6) He will take military action against those who wronged him, (7) His case is related to a peace treaty with the British government, (8) The judge has committed treason, (9) His rash [caused by his medications] will kill him, (10) The public defender's office is part of a Hispanic plot against him, [and] (11) His Keyhea [CDCR order requiring antipsychotic medication] was a criminal sentence for his offense."

Dr. Badre stated, "Contrary to our prior encounters, the defendant was unable to appreciate alternative perspectives for some of those beliefs he previously had. The inability to appreciate alternative perspectives renders his beliefs fixed and consistent with delusions. His emotional fervor and tone was also quite different[.] [D]uring our prior encounters, Mr. Dawes used to laugh and be visibly entertained in the discussion of legal approaches. However, during this interview, Mr. Dawes was angry and irritable, often

9

interrupting me from asking him questions. This change in attitude is also consistent with paranoia associated with delusions. While some of those beliefs could have been previously assessed as overvalued ideas, they now present as psychotic. [¶] I would recommend that the defendant be referred to a state hospital or [Jail Based Competency Treatment] program for restoration to competency."

At the same time, Dr. Badre issued a report on involuntary medication in which he found that Dawes "suffers from severe mental illness" and "lacks the capacity to make decisions regarding antipsychotic medication." Dr. Badre found that if Dawes was not treated with antipsychotic medication, "it is possible that serious harm to the physical or mental health of the defendant will result." The doctor further found that the "[a]dministration of antipsychotic medication is likely to restore the defendant's competency to stand trial." Dr. Badre recommended that Dawes be given medications involuntarily under section 1370, subdivisions (a) and (b)(ii).

The parties appeared by video for a hearing in early June 2021.[13] At the hearing, the prosecutor and defense counsel stipulated to Dr. Badre's qualifications and to the findings. Dawes objected to the involuntary medications as "a violation of [his] constitutional rights." Dawes stated, "This has already been before a trial. I've already had a trial on this. . . . [T]he thing is I have a right to call witnesses in my defense and to present evidence in my defense, which I'm not being allowed to do. You're denying me my right to a speedy trial, and you're denying me my right to present evidence in my defense[.]" After Dawes interrupted the court's attempt to

_____

[13] Counsel indicated that Dawes consented to appear by video for purposes of the hearing. The California Supreme Court issued Emergency Rule 3(a), which authorized remote appearances during the COVID-19 pandemic.

10

speak to defense counsel, the court muted his microphone. His microphone remained muted for the remainder of the hearing. Defense counsel objected "to any force or violence used towards Mr. Dawes as it pertains to medications."[14] The trial court declared Dawes incompetent to stand trial and ordered the use of involuntary medication "only if he refuses. And they should not be used in a forceful manner, but I'm authorizing them over the defense objection."

On June 4, 2021, the trial court entered a judgment of mental incompetency based on the evidence presented and ordered that Dawes be committed to a state hospital. The trial court further found that Dawes "lacks capacity to make a decision regarding antipsychotic medication. The defendant's mental disorder requires medical treatment with antipsychotic medication, and if the defendant's mental disorder is not treated with antipsychotic medication, it is possible that serious harm to the physical or mental health of the patient will result."

## DISCUSSION

"The constitutional guarantee of due process forbids a court from trying or convicting a criminal defendant who is mentally incompetent to stand trial. [Citations] Section 1367 of the Penal Code, incorporating the applicable constitutional standard, specifies that a person is incompetent to stand trial 'if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.'" (*People v. Rodas* (2018) 6 Cal.5th 219, 230 (*Rodas*); *People v. Buenrostro* (2018) 6 Cal.5th 367, 386 ["As a matter of due process, '[a] defendant may not be put

---

[14] The record reflects that the trial court confirmed visually that Dawes understood that defense counsel objected to any sort of forcible medication.

11

to trial unless he " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.' " ' "].)

Section 1368 requires that criminal proceedings be suspended and competency proceedings be commenced if "a doubt arises in the mind of the judge" regarding the defendant's competence (*id.*, subd. (a)) and defense counsel concurs (*id.*, subd. (b)). Our Supreme Court "has construed that provision, in conformity with the requirements of federal constitutional law, as meaning that an accused has the right 'to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, because of mental illness, of understanding the nature of the proceedings against him or of assisting in his defense.' " (*Rodas*, *supra*, 6 Cal.5th at p. 231.) "When a doubt exists as to the defendant's mental competence, the court must appoint an expert or experts to examine the defendant. The issue is then tried to the court or a jury under the procedures set out in Penal Code section 1369." (*Ibid.*)[15]

Before evidence is introduced at a competency trial, the defendant is presumed competent. (§ 1369, subd. (f); see *Booth v. Superior Court* (1997) 57 Cal.App.4th 91, 99.) The parties may stipulate to a trial that is based on written expert reports. (*People v. McPeters* (1992) 2 Cal.4th 1148, 1168-1169.) Incompetence is established by a preponderance of the evidence. (§ 1369, subd. (f); *Medina v. California* (1992) 505 U.S. 437, 440.)

"If the defendant or the defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence, the court shall

15    Both parties have the right to a jury on demand to decide competency. (§ 1369; *People v. Superior Court* (*McPeters*) (1985) 169 Cal.App.3d 796, 798.) However, defense counsel may waive a jury trial, even over the defendant's objection. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 282.)

appoint two psychiatrists, licensed psychologists, or a combination thereof." (§ 1369, subd. (a)(1).) " 'The appointment of two experts in such circumstances provides a minimum protection for the defendant against being incorrectly found incompetent to stand trial.' " (*People v. Leelu* (2019) 42 Cal.App.5th 1023, 1030 (*Leelu*).)

Dawes contends that the trial court failed to comply with section 1369 by failing to appoint a second mental health expert. Dawes points out that, although his counsel moved to suspend proceedings due to Dawes's purported incompetence and objected at the hearing only "to any force or violence used towards Mr. Dawes as it pertains to medications," Dawes himself repeatedly contested the competency proceedings, expressed his desire to go to trial, and objected to forced medication. The Attorney General concedes that Dawes's statements in court and his correspondence conveyed that he disagreed with his lawyer's position on competence and did not believe he was incompetent to stand trial. We agree.

When a defendant or his counsel " 'expressly inform[s]' " the court that the defendant is not seeking a finding of incompetence, the trial court is required to appoint a second mental health expert. (*Leelu, supra,* 42 Cal.App.5th at p. 1030 ["Under section 1369(a), either a defendant or her or his counsel must 'expressly inform[ ] the court during the competency hearing that [the] defendant [is] not seeking a finding of incompetence' to trigger the requirement that the trial court appoint a second mental health expert."].) Dawes's letters to the court expressed that he was not seeking a finding of incompetence. At the hearing, Dawes stated, "This has already been before a trial. I've already had a trial on this. . . . [T]he thing is I have a right to call witnesses in my defense and to present evidence in my defense, which I'm not being allowed to do. You're denying me my right to a speedy

trial, and you're denying me my right to present evidence in my defense[.]" Dawes's statements made it clear that he was not seeking a finding of incompetence. Moreover, as he points out on appeal, once he began voicing his objections at the hearing, the trial court turned off his microphone for the duration of the hearing, potentially preventing him from making a full record of any additional objections. We therefore agree that the trial court erred in failing to comply with section 1369's requirement to appoint a second mental health evaluator.

Dawes contends the finding of incompetency should be vacated, and the Attorney General agrees. The Attorney General concedes that, because the competency finding should be vacated, the involuntary medication order stemming from that finding should likewise be vacated. We accept the Attorney General's concessions. Both the competency determination and the corresponding involuntary medication order shall be vacated. Proceedings shall remain suspended, and the trial court shall obtain an updated forensic psychiatry clinic report on mental competency to stand trial and shall appoint a second mental health expert to conduct an additional evaluation. (§§ 1368, 1369.)

DISPOSITION

The judgment is reversed. The judgment of mental competency and the corresponding involuntary medication order dated June 4, 2021 are vacated and the cause is remanded for further proceedings consistent with this opinion.

GUERRERO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.