NOT DESIGNATED FOR PUBLICATION

No. 122,250

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY N. D'ARCY a/k/a ANTHONY N. DARCY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed March 25, 2022. Appeal stayed and case remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., POWELL and CLINE, JJ.

POWELL, J.: Prior to trial, Anthony N. D'Arcy was subjected to three examinations to determine his competency to stand trial. After his third competency examination, the district court perfunctorily noted that the examining physician had declared D'Arcy competent and queried counsel as to any other remaining issues that needed to be addressed before proceeding to trial. After a jury trial, D'Arcy was convicted of intentional second-degree murder, aggravated assault, and aggravated endangering of a child. D'Arcy now appeals on numerous grounds, one being that he was not afforded a proper hearing to determine his competency after the district court received his third competency report. Because we agree with D'Arcy that his competency hearing was

1

inadequate, we remand the issue of D'Arcy's competency to the district court to conduct a proper competency hearing.

FACTUAL AND PROCEDURAL BACKGROUND

Christina Decker and Stephen Snyder were interested in buying D'Arcy's house in 2017. Ultimately, the parties agreed on a price and signed a contract. Despite this agreement, D'Arcy became upset when Decker requested additional money based on inspections but eventually agreed to pay $1,500 at closing for repairs. Later, D'Arcy requested a two-week lease in additional to the leaseback provision already agreed to in the sales contract so he could live in the house for two weeks after closing and not have to move back into the house if something went wrong at closing. Decker and Snyder did not object to D'Arcy wanting the leaseback provision, but a problem arose when D'Arcy wanted to forbid them access to the house for the two-week lease period.

Other problems arose but were worked out, and the parties closed on April 27, 2017. The parties also signed the lease allowing D'Arcy to remain in the home. D'Arcy agreed Decker and Snyder could access the house with notice but could not make repairs while he lived there. Snyder waited until the Sunday after closing to schedule a visit to the house to take some measurements. D'Arcy agreed they could come over at 6 p.m. Monday. At 1 p.m. on Monday, D'Arcy had the locks changed on the house. He also emailed the real estate agent and told her Snyder was "a bit huffy" and that Snyder and Decker will "back off" if they were smart.

Snyder arrived at the house around 6 p.m. with his 8-year-old son, L.S. Decker planned to be there too but was running late. Snyder walked up to the house while L.S. stayed on the sidewalk. L.S. heard raised voices, then saw Snyder try to jump and curl into a ball. L.S. heard a loud bang and saw a small hole in Snyder's stomach. He and his

2

dad ran. Two more bangs followed the first shot, and when L.S. reached his dad's truck, he looked back and saw his dad on the ground bleeding. Snyder died at the scene.

The State charged D'Arcy with premeditated first-degree murder, aggravated assault, and aggravated child endangerment. Before trial, the district court ordered D'Arcy to undergo a competency evaluation, which was completed by David S. Blakely, M.D., on April 3, 2017. Dr. Blakely noted D'Arcy's short-term memory was poor and D'Arcy had trouble working with his lawyers but found him competent to stand trial. At the August 25, 2017 hearing, the district court found D'Arcy was competent.

The district court ordered a second competency evaluation on December 15, 2017, which Dr. Blakely completed on December 28, 2017. Dr. Blakely recommended D'Arcy undergo neuropsychiatric testing. Based on the report, the district court found D'Arcy incompetent to stand trial and ordered him committed to Larned State Security Hospital (LSSH) to undergo further evaluation and treatment.

The hospital submitted its report to the district court. D'Arcy refused to answer questions or responded, "'I don't know.'" D'Arcy also refused to participate in neuropsychological or psychological testing. The evaluator opined D'Arcy was competent to stand trial. At a hearing on September 28, 2018, the district court adopted the evaluation's findings and found D'Arcy competent to stand trial.

On July 31, 2019, a request for a third competency evaluation was filed. The evaluation was ordered on August 1, 2019, and completed by Dr. Blakely on August 8, 2019. At a hearing held the same day Dr. Blakely's report was issued, and just four days before the trial was to begin, the district court explained it did not yet have the written report but that the verbal results of the evaluation stated D'Arcy was competent but had serious memory issues. As a result, the district court concluded D'Arcy remained competent to stand trial.

A jury convicted D'Arcy of intentional second-degree murder, aggravated assault, and aggravated endangering of a child. The district court sentenced D'Arcy to 165 months' imprisonment for second-degree murder and consecutive sentences of 20 months and 7 months for his other two convictions.

D'Arcy timely appeals.

## WAS D'ARCY'S THIRD COMPETENCY HEARING INADEQUATE?

The Kansas Supreme Court has stated that a defendant may raise two types of challenges to competency. A procedural competency claim is based upon the district court's failure to either conduct a competency hearing or to conduct an adequate competency hearing. A substantive competency claim involves an allegation that the defendant was tried and convicted while incompetent. *State v. Woods*, 301 Kan. 852, 858, 348 P.3d 583 (2015). Here, D'Arcy raises both types.

D'Arcy argues the district court did not provide him with an adequate competency hearing and erred in finding him competent to stand trial. Specifically, D'Arcy asserts his third competency hearing was inadequate because the district court stated the report found D'Arcy remained competent without making an actual finding and because the district court did not provide D'Arcy with the opportunity to present evidence of incompetency. D'Arcy also alleges he was not competent to stand trial because he was unable to assist in his defense due to his memory problems and inability to work with his attorneys.

The State counters that there was no error because D'Arcy had the opportunity to request a hearing but chose not to. It also argues the district court properly relied upon the third competency report to find D'Arcy competent. Alternatively, the State asks that if we

order a competency hearing, the appeal be bifurcated and the case remanded for a retrospective competency hearing.

*Standard of Review*

We review a district court's decision on a defendant's competency to stand trial for abuse of discretion. Judicial discretion is abused if the judicial action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Woods*, 301 Kan. at 860-61. The party asserting an abuse of discretion occurred bears the burden of showing its existence. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

*Analysis*

The criminal trial of an incompetent person violates due process. *Medina v. California*, 505 U.S. 437, 453, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). Under Kansas law, a person who is charged with a crime is "'incompetent to stand trial'" if, because of a mental illness or defect, the person is unable "[t]o understand the nature and purpose of the proceedings against him" or is unable "to make or assist in making his defense." K.S.A. 22-3301(1); *Woods*, 301 Kan. at 857. Moreover, a criminal defendant may be tried only if the defendant "'has sufficient present ability to consult with [the defendant's] lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.' [Citations omitted.]" *State v. Barnes*, 293 Kan. 240, 256, 262 P.3d 297 (2011).

"A criminal defendant is presumed competent to stand trial. [Citation omitted.]" *State v. Hill*, 290 Kan. 339, 367, 228 P.3d 1027 (2010). The party raising the question of competence bears the burden to prove competency or incompetency by the preponderance of the evidence. 290 Kan. at 367.

A defendant or the defendant's counsel may request a determination of the defendant's competency to stand trial any time between the time the defendant is charged and the pronouncement of the sentence. If, upon this request, the district judge before whom the case is being tried finds there is reason to believe the defendant is incompetent to stand trial, the judge shall suspend the proceedings and conduct a hearing to determine the defendant's competency. K.S.A. 2020 Supp. 22-3302(1). A competency hearing must be conducted by a district judge if the defendant is charged with a felony. K.S.A. 2020 Supp. 22-3302(2). The competency hearing may be conducted with the assistance of a jury at the district judge's discretion, and the district court may order a psychiatric or psychological examination of the defendant. K.S.A. 2020 Supp. 22-3302(3).

In this case, the district court ordered three different competency evaluations. D'Arcy was found competent to stand trial after his first evaluation. After his second evaluation, D'Arcy was found incompetent to stand trial, and the district court ordered D'Arcy to LSSH for further treatment and evaluation. After D'Arcy's evaluation at LSSH, the district court found D'Arcy competent to stand trial.

D'Arcy limits his appeal to challenging his third competency evaluation and hearing. The third competency evaluation was completed on August 8, 2019, just four days before the jury trial began. At the hearing following the evaluation, the district court explained it did not yet have the written report, but both the State and defense counsel agreed they were informed of the verbal results stating D'Arcy was competent. The district court explained Dr. Blakely's conclusions and found "the defendant is still competent." The district court asked if either party had anything further to discuss, but nothing was raised. D'Arcy asserts this hearing was inadequate.

The State argues D'Arcy cannot raise the issue of his competency for the first time on appeal because D'Arcy did not request a hearing when he had the opportunity to do so. D'Arcy replies that we can hear this for the first time on appeal because this issue raises

due process concerns. We agree. The challenge to the adequacy of a competency hearing "raises due process concerns and questions the district court's compliance with a statutory obligation." *State v. Foster*, 290 Kan. 696, 702, 233 P.3d 265 (2010).

"'The failure to hold a competency hearing, when "evidence raises a bona fide doubt as to the defendant's competency, is a denial of due process." [Citations omitted.]'" *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The United States Supreme Court has explained that the standard for satisfying due process is whether the hearing "affords the criminal defendant a reasonable opportunity to demonstrate that he is not competent to stand trial." *Medina*, 505 U.S. at 451. While a hearing is required before a determination of competency, there is no statutory requirement for the presentation of live testimony and the cross-examination of witnesses. The district court has discretion to determine the nature and extent of evidence presented at the statutorily required hearing. *State v. Parker*, 34 Kan. App. 2d 224, 228, 116 P.3d 759 (2005).

While the district court held a competency hearing following Dr. Blakely's third report, it did not give D'Arcy a chance to present evidence to establish his incompetence. Admittedly, D'Arcy did not ask or seek to present any evidence. However, we think it would have been difficult for D'Arcy to do so because he did not have Dr. Blakely's third written report. D'Arcy could not present evidence disputing the report and asserting his incompetence without the report.

The State claims D'Arcy could have requested a hearing when the district court asked the parties if there was anything else the parties needed to address that day. But the district court asked the question only after determining D'Arcy's competency. In other words, the competency hearing portion of the proceeding was over when the district court asked if there were any other matters to discuss. Given the record before us, we are forced to conclude the third competency hearing was inadequate to protect D'Arcy's procedural due process rights.

When a district court does not conduct an adequate competency hearing, a retrospective hearing may fix the error. *State v. Jenkins*, 308 Kan. 545, 559, 422 P.3d 72 (2018). To determine whether a hearing can feasibly determine the defendant's retrospective competency at the time of trial, we consider the four *McGregor* factors:

> "'(1) [T]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the government and defendant, and jail officials.'
>
> "If a court determines a retroactive competency determination would not be feasible, 'the procedural violation compels reversal.' [Citations omitted.]" *Jenkins*, 308 Kan. at 559.

See *McGregor v. Gibson*, 248 F.3d 946, 962-63 (10th Cir. 2001).

We first address the passage of time.

> "When a great amount of time has passed since the defendant's trial, it is less likely that a court can retrospectively determine whether the defendant was competent at the time of the trial. Contemporaneous medical evidence, . . .—the focus of the second factor—can shift this factor one way or the other. [Citations omitted.]" *Jenkins*, 308 Kan. at 560.

D'Arcy's third competency evaluation occurred on August 8, 2019. His trial was held from August 12, 2019, until August 16, 2019. The two-and-a-half years since the trial is not a long time, though; given D'Arcy's age, any age-related decline may give the short time a greater effect on his mental facilities. That said, the third competency evaluation occurred only four days before the trial. Because of the short time and the

contemporaneous competency evaluation by Dr. Blakely, this factor favors a retrospective competency hearing.

Second, we address the availability of contemporaneous medical evidence. As discussed in the first factor, Dr. Blakely conducted his third competency evaluation four days before trial and found D'Arcy competent. The district court could also use the prior two competency evaluations and the LSSH report to determine the progression of D'Arcy's competency. This factor also weighs in favor of a retrospective hearing.

The third factor is any statements made by the defendant in the trial record. D'Arcy testified at trial about the events. The district court would have a full trial record of D'Arcy's testimony to use at a retrospective hearing.

Finally, the fourth factor is the availability of individuals and trial witnesses. This factor is unknown. Neither party presents evidence of whether the prosecutors, witnesses, or the district judge who presided at trial would be available or the availability of any other official. As a result, this factor is neutral because it is unknown what information will be available.

Given that the first three *McGregor* factors weigh in favor of a retrospective competency hearing, we find a remand to the district court so that it may conduct such a retrospective competency hearing is the best approach here. The parties agree. Given the lack of a sufficient record and the inadequate competency hearing, we cannot opine on D'Arcy's competence at the time he was tried. Accordingly, we stay this appeal and remand the issue of D'Arcy's competency to the district court so that it may perform a retrospective competency hearing to determine whether D'Arcy was competent to stand trial. The other issues raised by D'Arcy's appeal—including D'Arcy's argument that he was not competent to stand trial—shall remain in abeyance until a determination of D'Arcy's competency is made.

Appeal stayed and case remanded with directions.